HOLIDAY VILLAGE SHOPPING CENTER, a liquidated corporation, By and Through John T. MITCHELL, Trustee for the shareholders of Holiday Village Shopping Center

v.

The UNITED STATES.

No. 87–82T.

United States Claims Court.

June 6, 1984.

J. Gordon Hansen, Salt Lake City, Utah, attorney of record, for plaintiff; John T. Mitchell, Great Falls, Mont., and Hansen, Jones, Maycock & Leta, Salt Lake City, Utah, of counsel.

Ellen C. Specker, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

Plaintiff corporation seeks to recover $104,401 in federal income taxes with interest, paid for plaintiff's final tax year ending February 1980. The question at issue is whether a portion of the accelerated depreciation allowances on real property previously deducted by a partnership in which plaintiff was a 99 percent limited partner may be recaptured from plaintiff, pursuant to I.R.C. § 1250,[1] upon plaintiff's liquidating distribution of the partnership interest to its stockholders at a value in excess of the depreciated basis of the partnership property. The court grants defendant's cross-motion for summary judgment and dismisses plaintiff's petition.

### Facts

Plaintiff, Holiday Village Shopping Center, was a corporation organized pursuant to the laws of the State of Montana. Its principal business was the ownership, operation, and management of its major asset, the Holiday Village Shopping Center in Great Falls, Montana. In addition, plaintiff owned a 99 percent limited partnership interest in The Greenbriar partnership, which owned and operated residential real property. Allowances for depreciation of such property had been deducted by The Greenbriar on its partnership information returns under accelerated methods, and plaintiff had reported on its income tax returns its 99 percent share of the income or losses as so computed.

On February 10, 1979, the directors and shareholders of the plaintiff corporation adopted a plan of complete liquidation. Within 12 months of the date of the adoption of the plan, all of the corporation's property, including the limited partnership interest in The Greenbriar, was distributed to its shareholders.

Plaintiff's final income tax return reported that the corporation had recognized gain as a result of the distribution of the partnership interest at a fair market value in excess of its remaining basis, representing the recapture of depreciation in excess of straight-line, previously deducted by The Greenbriar. Thereafter, plaintiff filed a claim for refund on the ground that it had erred in reporting the recapture income, that I.R.C. § 336 barred recognition of any gain to the plaintiff corporation on the distribution, and that the depreciation recapture statute was inapplicable to the distribution of a partnership interest. After denial of the claim, plaintiff timely filed this suit.

### Discussion

Although a stockholder recognizes capital gain on the receipt of distributions in liquidation of a corporation (I.R.C. §§ 301, 302), the corporation recognizes no gain on the distribution of its assets. This rule has been well established since as far back as 1935[2] and was specifically enacted in § 336 of the Code in 1954.[3]

---

1. I.R.C. refers to the Internal Revenue Code of 1954 (26 U.S.C.).

2. See *General Utilities Co. v. Helvering,* 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154 (1935).

3. § 336. General rule

The depreciation recapture provisions are of more recent vintage. I.R.C. § 1245, relating to gain from dispositions of certain depreciable personal property, originated in the Revenue Act of 1962 (Pub.L. No. 87–834, § 13(a)(1), 76 Stat. 1032). I.R.C. § 1250, relating to gain from dispositions of certain depreciable realty, was added by the Revenue Act of 1964 (Pub.L. No. 88–272, Title II, § 231(a), 78 Stat. 100).

The general purpose of the recapture provisions is explained in the House Committee report on § 1250 as follows (H.R. Rep. No. 749, 88th Cong., 1st Sess. 101–02 (1963) U.S.Code Cong. & Admin.News 1964, pp. 1313, 1410–1411 (1964–1 C.B. (Part 2) 123, 225–26):

*(b) General reasons for provisions.* —Since the depreciation deductions are taken against ordinary income while any gain on the sale of the property is treated as a capital gain, there is an opportunity under present law in effect to convert ordinary income into capital gain. This occurs whenever the depreciation deductions allowed reduce the basis of the property faster than the actual decline in its value.

Last year Congress in the Revenue Act of 1962 recognized the existence of this same problem in the case of gains from the disposition of depreciable machinery and other personal property. In that act, the Congress provided that any gain realized on the sale of these assets in the future would be ordinary income to the extent of any depreciation deductions taken in 1962 and subsequent years with respect to the property.

In the case of real estate, this problem is magnified by the fact that real estate is usually acquired through debt financing and the depreciation deductions allowed relate not only to the taxpayer's equity investment but to the indebtedness as well. Since the depreciation deductions relate to the indebtedness as well as the equity in the property, this may permit the tax-free amortization of any mortgage on the property. As a result in such cases there is a tax-free cash return of a part of the investment which may in fact enable the taxpayer to show a loss for several years which he may offset against income for tax purposes.

\* \* \* \* \* \*

[Y]our committee has amended present law to provide that when depreciable real estate is sold after December 31, 1963, in certain cases a proportion of any gain realized upon the sale of the property is to be treated as ordinary income; that is, previous depreciation deductions against ordinary income are to be "recaptured" from the capital gains category.

The bill accomplishes this result by treating as ordinary income a certain percentage of what is called "additional" depreciation or the amount of gain realized on the sale of the property, whichever is smaller.[1]

---

[1] This provision also applies to certain dispositions where there is not a sale or exchange. Therefore, the bill refers not only to the excess of the amount realized over the adjusted basis of the property but also, so that the provision will apply to these dispositions which are not sales or exchanges, it refers to the excess of the fair market value of the property over its adjusted basis.[4]

To accomplish this objective § 1250(a)(1)(A) provides in general that upon the disposition of real property subject to the depreciation allowance an applicable percentage of the lower of the depreciation taken which is in excess of straight line depreciation, or

B. the excess of—

(i) the amount realized (in the case of a sale, exchange, or involuntary conversion), or the fair market value of such

---

Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation.

[4] The Senate Committee report contains substantially identical language. S.Rep. No. 830, 88th Cong., 2d Sess. 131–32 (1964) (1964–1 C.B. (Part 2) 502, 635–36).

property (in the case of any other disposition), over

(ii) the adjusted basis of such property.

shall be treated as gain which is ordinary income.

The section then provides that "Such gain shall be recognized notwithstanding any other provision" of the income tax law (§ 1250(a)(1)) and reiterates that "This section shall apply notwithstanding any other provision of" such law (§ 1250(i)).

The legislative committee reports make it clear that a corporate liquidating distribution of property is a disposition within the meaning of § 1250. The House Committee report (H.R.Rep. No. 749, 88th Cong., 1st Sess. 104–05 (1963), U.S.Code Cong. & Admin.News 1964, p. 1413 (1964–1 C.B. (Part 2) 123, 228–29)) states:

> Ordinary income under your committee's bill is recognized not only in the case of the sale or exchange of real property but also in the case of all other types of dispositions unless a specific exception is provided. Thus, as in the case of the provision enacted last year in connection with tangible personal property, this provision may result in the realization of ordinary income even though capital gain might not otherwise have been realized at the time of such disposition.[5]

Plaintiff does not contend that a liquidating distribution of property by a corporation falls within the scope of one of the specific exceptions to a disposition enumerated in § 1250, either as originally enacted or as amended to the years at issue, and there is no basis from which such an inference may be drawn.[6]

The same committee report further states (H.R.Rep. No. 749, *supra*, at A148–49, U.S.Code Cong. & Admin.News 1964, p. 1574 (1964–1 C.B. (Part 2) at 396–97)):

> Paragraph (1) of section 1250(a) further provides (as does sec. 1245(a)(1) in cases to which it applies) that gain is to be recognized notwithstanding any other provision of subtitle A of the code. Thus, other nonrecognition sections of the code are overridden by the new section. For example, gain under section 1250(a)(1) would be recognized to a corporation in the case of a distribution of section 1250 property by it to a shareholder, *notwithstanding the provisions of section 311(a) or 336 of the code.*[7] [Emphasis supplied.]

■ From both the face of the statute and the committee reports, it is clear, therefore, that there is no merit to plaintiff's argument that because § 336 provides that no gain or loss shall be recognized to a corporation on the liquidating distribution of its assets there can be no recapture of depreciation from the corporation under § 1250. And *see also Bonaire Development Co. v. Commissioner,* 76 T.C. 789, 801–02 (1981), *aff'd,* 679 F.2d 159 (1982); B. Bittker & S. Eustice, *Federal Income Taxation of Corporations and Shareholders* (4th ed. 1979), ¶ 11.61 at 11–57; and 2 W. McKee, *Federal Taxation of Partnership and Partners,* § 15.07[2] at 15–52 (1977).

■ This leaves for consideration plaintiff's remaining argument that recapture is improper because plaintiff's distribution of the 99 percent limited partnership interest was not a disposition of depreciable property. The key assumption underlying this contention is that for purposes of

---

5. The Senate Committee report is substantially identical. S.Rep. No. 830, *supra,* at 135 (1964–1 C.B. (Part 2) at 639).

6. The specific exceptions in § 1250 as amended to 1980 are (§ 1250(d)): (1) Gifts; (2) Transfers at death; (3) Certain tax-free transactions; (4) Like kind exchanges, involuntary conversions, etc.; (5) Transactions relating to gain from sales or exchange to effectuate policies of F.C.C. or in obedience to S.E.C. orders; (6) Property distrib-

uted by a partnership to a partner; (7) Disposition of principal residence; (8) Disposition of qualified low-income housing; (9) Transfers to tax-exempt organizations where property will be used in unrelated business; (10) Foreclosure dispositions; and (11) Section 1245 recovery property.

7. *See also* S.Rep. No. 830, *supra,* at 262 (1964–1 C.B. (Part 2) at 765).

the Internal Revenue Code a partnership is an entity rather than an aggregation of the individual partners who jointly own the property; and, therefore, a corporate partner cannot be deemed to have disposed of its proportionate share of partnership property when it distributed its partnership interest.

The assumption is much too broad. Subchapter K, of Title I of the Internal Revenue Code, which contains the partnership provisions, cuts both ways. In *United States v. Basye*, 410 U.S. 441, 448 n. 8, 93 S.Ct. 1080, 1085, n. 8, 35 L.Ed.2d 412 (1973), the Supreme Court stated:

> There has been a great deal of discussion in the briefs and in the lower court opinions with respect to whether a partnership is to be viewed as an "entity" or as a "conduit." * * * The legislative history indicates, and the commentators agree, that partnerships are entities for purposes of calculating and filing informational returns but that they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares. See, e.g., H.R.Rep. No. 1337, 83d Cong., 2d Sess., 65–66 (1954); S.Rep. No. 1622, 83d Cong., 2d Sess., 89–90 (1954); 6 J. Mertens, Law of Federal Income Taxation § 35.01 (1968); S. Surrey & W. Warren, Federal Income Taxation 1115–1116 (1960); Jackson, Johnson, Surrey, Tenen & Warren, The Internal Revenue Code of 1954: Partnerships, 54 Col.L.Rev. 1183 (1954).

In the drafting of subchapter K, the Congressional committees, which described their efforts as "the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws", stated that "in general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting and not a taxable entity," while prescribing in addition specific statutory treatment of transactions between partners and partnerships. H.R. Rep. No. 1337, 83d Cong., 2d Sess. 65 (1954) (*reprinted in* 1954 U.S.Code Cong.

& Ad.News 4025, 4091) and S.Rep. No. 1622, 83d Cong., 2d Sess. 89 (1954) (*reprinted in* 1954 U.S.Code Cong. & Ad. News 4629, 4722). The House conference committee report further added (H.R.Rep. No. 2543, 83d Cong., 2d Sess. 59 (1954) (*reprinted in* 1954 U.S.Code Cong. & Ad. News 5280, 5319–20):

> Both the House provisions and the Senate amendment provide for the use of the "entity" approach in the treatment of the transactions between a partner and a partnership which are described above. *No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions.* An illustration of such a provisions is section 543(a)(6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions. [Emphasis supplied.]

■ Thus, contrary to plaintiff's assumption, Congress has not committed itself to the entity theory for all partnership tax purposes; and the proper inquiry is not whether a partnership is an entity or an aggregate for purposes of applying the internal revenue laws generally, but rather which is the more appropriate and more consistent with Congressional intent with respect to the operation of the particular provision of the Internal Revenue Code at issue.

An illustration of the application of such approach may be found in *Casel v. Commissioner*, 79 T.C. 424 (1982). There the issue was whether the petitioner's distributable share of a loss by a partnership in which he was a 50 percent partner should be reduced pursuant to I.R.C. § 267, to the extent of the unpaid management fees owed by the partnership to the petitioner's wholly owned family corporation, which were accrued and deducted by the partnership in computing its losses for 1974 and 1975. In view of the fact that § 267 barred

the deduction of an amount owed by the petitioner, the petitioner claimed that it did not apply to an amount owed by the partnership, contending that a partnership was an entity separate from the individuals who made it up. The court disallowed the deduction. In explanation it quoted the language of the House conference committee report discussed *supra,* and it then stated (79 T.C. at 433):

When the 1954 Code was adopted by Congress, the conference report * * * clearly stated that whether an aggregate or entity theory of partnerships should be applied to a particular Code section depends upon which theory is more appropriate to such section. Section 267(a)(2) serves to foreclose a loophole to the tax laws that would otherwise permit a deduction for a payment never made to a related party that may never seek enforcement of its contractual rights. If we were to apply an entity theory of partnerships to such section, then that loophole would continue to exist whenever an individual partner interposed his partnership between himself and his related corporation in transactions encompassed by section 267(a).

Another illustration of such treatment may be found in *Gulfstream Land & Development v. Commissioner,* 71 T.C. 587 (1979), which dealt with the interrelationship between I.R.C. § 1031(a) and the partnership provisions. Section 1031(a) provides that "No gain or loss shall be recognized if property held primarily for sale * * *) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment." There the petitioner had transferred to another taxpayer an interest in a joint venture (partnership) in exchange for a joint venture interest in a different enterprise, both of which were actively engaged in the land development business and owned, as their stocks in trade, land being developed for sale in such businesses. The petitioner contended that its gain on the transaction should not be recognized pursuant to the terms of I.R.C. § 1031(a). However, the court held that although the parties to the exchange only owned joint venture interests, the clear congressional intent to exclude exchanges of stock in trade from qualification under § 1031 made it essential, as a matter of substance over form, for purposes of that statute to examine the nature of the assets underlying the partnership interests to determine whether the taxpayers had exchanged stocks in trade. And *cf. Magneson v. Commissioner,* 81 T.C. 767, 771 (1983).

Similar treatment may be found in *Tennyson, Jr. v. United States,* 37 A.F.T.R.2d 76–1546, 1552 (D.Ark.1976), with respect to the interrelationship of § 453(d) and the partnership provisions. Section 453(d) provides that if an installment obligation is sold, or otherwise disposed of, any gain or loss resulting therefrom shall be considered as resulting from the sale of the property in respect of which the installment obligation was received. The court held that a limited partner's gift to his children and their spouses of two-thirds of his partnership interest in a natural gas field was for purposes of I.R.C. § 453(d) a taxable disposition by him of his share of installment obligations owned by the partnership.

For the purposes of applying §§ 1245 and 1250, treatment of a partnership as a collection of individuals jointly owning the partnership property is more in keeping with the legislative intent underlying those sections than would be treatment as an entity in which the partners own only shares in the enterprise. And this is even more so when the partnership is owned to the extent of 99 percent by a single partner.

The focus of the recapture statute is on taxing at ordinary income rates the person who benefited from the deduction of the excess depreciation at ordinary income rates. In this case that person is the plaintiff, the 99 percent partner. Had plaintiff dissolved the partnership incident to its own liquidation and distributed the assets in kind to its stockholders, plaintiff would unquestionably have been subject to recap-

ture of the excess depreciation on the assets. It is difficult to comprehend why there should be imputed to Congress the intent to adopt an entity theory in the application of §§ 1245 and 1250, which would allow a taxpayer to insulate itself from recapture and frustrate the operation of the statute merely by owning the depreciable assets in partnership and finally disposing them by way of distributing the partnership interest to its stockholders. If it could be permitted to do so, such a taxpayer would obtain a combined benefit not available to taxpayers generally, i.e.: (a) accelerated depreciation allowances equivalent to that which would be available to it by owning the property directly, reducing the partner's income from the property or offsetting its other income; and (b) at the same time avoiding any possibility of recapture of any portion of such depreciation upon disposition, on the theory that it did not own the property. It is illogical to impute to Congress the intent to allow such inconsistent tax conduct, which would allow a taxpayer the best of both worlds.

Another anomaly which would result from the treatment of the corporate distribution of the partnership interest as not involving a disposition of the partner's interest in the assets for purposes of §§ 1245 and 1250 is the likelihood that there would be no recapture of the excess depreciation from the distributee as well as from the distributor. The committee reports indicate the overriding congressional intent to require recapture of the excess depreciation as ordinary income, in order to prevent the abuse of tax benefits by obtaining deductions at ordinary income rates while later converting gain resulting from dispositions of the overdepreciated property into capital gain taxable at lesser rates. The importance Congress placed on this recapture is evidenced by the fact that in each recapture statute Congress provided twice that such gain is to be recognized "not withstanding any other provision" of the Code. Sections 1245(a)(1) and (d) and 1250(a)(1) and (i). Nevertheless, if as plain-

tiff argues, the corporate distributor is not taxable on the recapture income, plaintiff points out no statutory basis for subjecting the distributee to such tax. Indeed, the indications are that it would not be so taxed. Where there has been a sale or exchange of the interest of a partner, the partnership may elect to "increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property." Section 743(b)(1). Since amounts distributed in liquidation of the corporation are treated as payments "in exchange for" the stock (§ 331(a)), it would appear that the distributee of plaintiff's partnership interest would qualify for this increase in basis of the partnership assets. And, as previously noted, since recapture is based on the amount by which the lower of the amount realized on a sale or exchange, or the fair market value on any other distribution, exceeds the adjusted basis of the property (§§ 1245(a)(1) and 1250(a)(1)(A)), this could effectively preclude recapture of excess depreciation from anyone.

Other provisions of §§ 1245 and 1250 and related statutes also reflect the legislative intent to treat the partner as the owner of his share of the partnership depreciable assets for purposes of recapture:

■ (a) A partner's transfer to a partnership of property, which has been excessively depreciated, in exchange for an interest in the partnership, is not treated as an actual disposition of the property, but is excepted from the exchanges and dispositions subject to recapture of excess depreciation. I.R.C. §§ 1245(b)(3) and 1250(d)(3).

■ (b) Likewise, a distribution of property by a partnership to a partner is not treated as an actual disposition but is excepted from recapture of excess depreciation at the time of the distribution and is only taken into account when the partner disposes of the property. I.R.C. §§ 1245(b)(6) and 1250(d)(6).[8]

---

**8.** The House committee report on § 1250 describes the operation of this provision as follows

(c) Similarly, when a partner sells or exchanges his partnership interest, he is treated as if he has disposed of his share of the partnership property. The amount of money or the fair market value of the property received in the sale or exchange which is attributable to the excess depreciation on the underlying property is included in his ordinary income as from the sale of unrealized receivables as if he owned the transferred property directly. (I.R.C. § 751(c).)[9]

In approximately the last full page of its brief, almost as an afterthought, defendant also asserted that plaintiff's liquidating distribution of the partnership interest was an exchange of corporate assets for its own stock within the scope of § 751. However, as defendant did not actively pursue this contention in oral argument, as the court has serious questions with respect to the appropriateness of such construction, and as it is unnecessary to this decision for the court to resolve them herein, the court declines to rule on this contention.

### Conclusion

For the foregoing reasons, it is concluded that, pursuant to I.R.C. § 1250, plaintiff was properly taxed for the year 1980 with respect to income attributable to the recapture of its excess depreciation allowances,

(H.R.Rep. No. 749, *supra*, at 106–07, U.S.Code Cong. & Admin.News 1964, pp. 1415–1416 (1964–1 C.B. (Part 2) at 230–31)):

> A distribution of real property by a partnership to a partner, to the extent that the distribution represents the partner's share of unrealized appreciation attributable to this property, is not to result in ordinary income to the distributee partner at the time of the distribution. However, the unrealized appreciation representing additional depreciation taken by the partnership will be carried over to the distributee partner. When he disposes of this real property, the unrealized appreciation represented by these partnerships (or by an earlier transferee where the partnership acquired the property without recognizing gain), additional depreciation deductions will be taken into account in a manner substantially the same as that applying where the taxpayer himself took the depreciation deductions. This rule applies only to the extent a partner is considered as receiving his share of the real property to which is attributable potential ordinary income.

upon the distribution of its 99 percent partnership interests. Accordingly, defendant's motion for summary judgment is allowed and plaintiff's motion is denied. Plaintiff's complaint will be dismissed and costs allowed to defendant.

9. Congress amended § 751(c) to include §§ 1245 and 1250 property at the same time it enacted the latter two sections. Revenue Act of 1962, *supra,* §§ 13(f)(1), 14(b)(2); Revenue Act of 1964, *supra,* § 231(b)(6). The excerpt from the committee report referred to in the preceding footnote continues as follows with respect to this provision:

> An amendment made elsewhere to the code (sec. 751(c)) provides that in other cases the ordinary income element in real property is to be considered as "unrealized receivable." Thus, to the extent of applicable percentage of the additional depreciation deductions taken (or potential gain, if smaller) ordinary income will be recognized in the case of the sale of a partnership interest, in the case of a distribution to a retiring or a deceased partner, and in the case of distributions to a partner where he receives either more or less than his proportionate share of real property reflecting this ordinary income.