FRIEDMAN, Circuit Judge.
 

 This is an appeal from a judgment of the United States Claims Court 5 Cl.Ct. 566, dismissing the appellant’s complaint for a tax refund. The appellant corporation had a 99 percent interest as a limited partner in a partnership that held real property on which it took accelerated depreciation that exceeded the straight line amount. As a result, the partnership had operating losses, which the corporation (as a partner) used to reduce its income in determining its federal income tax. The corporation was completely liquidated and distributed all its assets to its stockholders, including the 99 percent limited partnership interest.
 

 The question is whether upon such liquidation the corporation was subject under
 
 *278
 
 the “recapture” provision of section 1250 of the Internal Revenue Code of 1954, to ordinary income tax upon the accelerated portion of the depreciation the partnership had taken on the real property. The Claims Court held that the corporation was liable for such tax. We affirm.
 

 I
 

 The appellant, Holiday Village Shopping Center (Holiday Village), was a corporation that owned and operated a shopping center. It also owned a 99 percent interest as a limited partner in a partnership which owned and operated residential real property. On its information returns the partnership reported, based on an accelerated method, deductions for depreciation of the real property. As a result of these depreciation deductions, the partnership showed a loss. On its corporate returns, Holiday Village deducted from its ordinary income its 99 percent share of the partnership losses.
 

 In 1979, Holiday Village was completely liquidated and all of the corporation’s assets, including the partnership interest, were distributed to its shareholders. In its federal income tax return for its final tax year, Holiday Village reported that, as a result of the distribution of the partnership interest, the corporation had recognized gain of $243,902, which represented the recapture, under section 1250 of the Internal Revenue Code of 1954, of the accelerated portion of the depreciation it had previously deducted. That section (p. 279 infra) provides that upon the disposition of real property upon which accelerated depreciation has been taken, the accelerated portion of the depreciation is to be recaptured by treating it as ordinary income, and that such treatment shall take place “notwithstanding any other provision of” the pertinent portions of the Code.
 

 Holiday Village subsequently filed an amended return in which it sought a refund of the tax it had paid on the accelerated depreciation. It contended that it was not liable for the tax because of section 336 of the Code (p. 279
 
 infra),
 
 which generally provides that a corporation shall not realize gain or loss upon the distribution of property in liquidation. The Commissioner denied Holiday Village’s refund claim, and Holiday Village filed the present suit in the Claims Court.
 

 On cross-motions for summary judgment, the Claims Court (Judge Miller) held that Holiday Village was taxable on the accelerated depreciation and dismissed the complaint. The court held that despite the general rule in section 336 of non-recognition of gain upon a corporate liquidation, the recapture provision of section 1250 applies when property upon which accelerated depreciation has been taken is disposed of in the complete liquidation of a corporation.
 

 The court held further that Holiday Village’s liquidating distribution to its stockholders of its 99 percent partnership interest was a disposition under section 1250 of the depreciated property held by the partnership. The court stated that the recapture statute was aimed at taxing at ordinary income rates the person who benefited from the deduction of the accelerated depreciation, which in this case was Holiday Village. For purposes of applying section 1250, the court treated the partnership “as a collection of individuals owning the partnership property.”
 

 II
 

 A. Section 336 of the Code provides that, with an exception not here applicable,
 

 no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation.
 

 Section 1250(a)(1)(A) provides that
 

 [i]f section 1250 property is disposed of after December 31, 1975, ... the excess of ... the fair market value of such property ... over the [taxpayer’s] adjusted basis of such property, shall be treated as gain which is ordinary income. Such gain shall be recognized notwithstanding any other provision of this subtitle.
 

 Section 1250(c) defines “section 1250 property” as “any real property ... which
 
 *279
 
 is or has been property of a character subject to the allowance for depreciation provided in section 167.”
 

 Section 1250 contains detailed provisions explaining how the amount of such recapture of accelerated depreciation is to be calculated. In the present ease, the Commissioner has required Holiday Village to pay ordinary income taxes on the difference between the accelerated depreciation the partnership took and the depreciation it would have taken under the straight line method.
 

 Holiday Village contends that section 336 governs this case and that since the distribution to its stockholders of all its property, including its 99 percent interest in the limited partnership, concededly was made in its “complete liquidation,” under section 336 it recognized no gain on the transaction. It argues that section 1250 is inapplicable because it did not dispose of any “section 1250 property.” It points out that that term covers only real property that is subject to an allowance for depreciation. It asserts that it did not distribute such property to its stockholders because it transferred to them only its interest in the partnership and not the underlying partnership assets themselves, and that only the latter real property assets were subject to depreciation.
 

 Although the argument is superficially appealing, the issue is not as simple or as simplistic as Holiday Village suggests.
 

 Holiday Village criticizes the Claims Court for treating the partnership as an aggregate of the interests of the individual partners rather than as the “entity” it asserts Congress adopted in subchapter K of Title I of the Internal Revenue Code as the basis for the taxation of partnerships. “[Pjartnerships [, however,] are entities for purposes of calculating and filing informational returns but ... they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares.”
 
 United States v. Basye,
 
 410 U.S. 441, 448 n. 8, 93 S.Ct. 1080, 1085 n. 8, 35 L.Ed.2d 412 (1973). In other situations the courts have dis-regarded the partnership entity and treated the partnership as a collection of individuals where each partner owns a proportionate share of the assets.
 
 See, e.g., Bennett v. Comm’r,
 
 79 T.C. 470 (1982);
 
 Gulfstream Land & Development Corp. v. Comm’r,
 
 71 T.C. 587 (1979).
 

 The legislative history of the 1954 Code, which added subchapter K to the Code, shows that Congress did not intend a partnership to be treated in all situations as an entity for tax purposes. The House Conference Committee Report, H.R.Conf.Rep. No. 2543, 83d Cong., 2d Sess. 59,
 
 reprinted in
 
 1954 U.S.Code Cong. & Ad.News 5280, 5319-20, states:
 

 Both the House provisions and the Senate amendment provide for the use of the “entity” approach in the treatment of the transactions between a partner and a partnership which are described above. No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions.
 

 The proper inquiry, therefore, is whether in determining the applicability of the recapture provision in section 1250 to the present situation, it “is more appropriate” to treat the partnership as an aggregate or “collection of individuals” than as “a separate entity.” For the following reasons, we conclude that the proper approach is that taken by the Claims Court, namely, viewing the partnership here as an aggregate of the individual partners.
 

 Holiday Village conceded at oral argument that if it had owned the partnership real property directly, the recapture provision of section 1250 would apply to the liquidation distribution of that property to its stockholders. Holiday Village also informed us that there were only two partners. The 99 percent interest in the partnership that Holiday Village had, realistically gave it an owner’s interest in the partnership property as effectively as if it
 
 *280
 
 had owned the property directly. Under these circumstances the partnership should not be viewed as an independent taxable entity wholly separate from and independent of its two partners.
 

 The purpose of the recapture provisions also supports treating the partnership for tax purposes as the aggregate of the two partners rather than as a separate entity. Section 1250 was designed to prevent taxpayers from converting ordinary income into capital gain.
 
 See
 
 H.R.Rep. No. 749, 88th Cong., 1st Sess. at 101-102. This would occur whenever a taxpayer reduces his income by taking depreciation deductions on real property that are larger than the actual decline in the value of the property that straight line depreciation is designed to reflect—such as the accelerated depreciation the partnership took here. When the taxpayer disposes of the property, the difference between the taxpayer’s basis and the fair market value would be taxed as a capital gain unless the accelerated depreciation is “recaptured” and taxed as ordinary income. The recapture provisions are intended to tax at ordinary income rates the portion of the income that was not taxed when earned because of the accelerated depreciation, and to prevent the taxpayer from treating this income as part of the capital gain realized on the disposition of the property.
 

 In the present case the partnership offset its depreciation deductions on real property against partnership income, resulting in ordinary income losses. Holiday Village offset its 99 percent share of those losses against its other income. Holiday Village thus benefited from the deductions to the same extent as if it had owned the depreciable assets directly, but now seeks to avoid recapture on the theory that it did not own those assets.
 

 Holiday Village offers no convincing reason to support this anomalous result. Its argument is a highly technical one that turns largely on the form of the transaction,
 
 i.e.,
 
 that what it distributed to its stockholders on liquidation was an interest in the partnership and not the underlying partnership property which gave that interest its value and which was the subject of the depreciation that it previously had utilized to reduce its taxable income. Courts, however, will focus on the substance rather than on the form of a transaction where necessary to reflect the economic realities of the situation.
 
 See Gregory v. Helvering,
 
 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).
 

 We conclude that, for the reasons given above, it is appropriate in this case to disregard the partnership entity and treat the liquidating distribution by Holiday Village to its stockholders of its 99 percent interest in the partnership as a distribution of the underlying partnership assets themselves.
 
 Cf. Crenshaw v. United States,
 
 450 F.2d 472 (5th Cir.1971);
 
 Gulfstream Land & Development Corp. v. Comm’r,
 
 71 T.C. 587 (1979).
 

 B. Holiday Village argues that although an aggregate approach may be appropriate when applying provisions of the Code other than subchapter K, the latter subchapter exclusively governs the tax consequences of the transfer of a partnership interest, and that those provisions do not provide for recapture of accelerated depreciation upon the transfer of an interest in a partnership. It relies upon two subsections of subchapter K: sections 741 and 751 of the Code.
 

 Section 741 provides that, upon the “sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner” and that such gain or loss “shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751____” Section 751(a)(1) states that the amount of money or property a trans-feror partner receives in exchange for all or part of his interest in the partnership attributable to “unrealized receivables of the partnership” shall be taxed as ordinary income. Section 751(c) defines “unrealized receivables” as including “section 1250 property (as defined in section 1250(c)).”
 

 
 *281
 
 Holiday Village contends that the only situations in which accelerated depreciation may be recaptured upon the transfer of partnership interests are those to which the two sections apply and that those sections do not cover the liquidating distribution of the corporation’s 99 percent interest in the partnership to its stockholders because such distribution was not a “sale or exchange” of a partnership interest. In other words, Holiday Village’s position is that unless section 741 and 751 cover the particular disposition of a partnership interest involved, there is no way in which the partnership’s accelerated depreciation may be recaptured. It urges that section 1250 applies only to the extent that section 751 makes it applicable by treating section 1250 property as “unrealized receivables” under the recapture provision of section 751.
 

 We do not agree that sections 741 and 751 preclude the application of section 1250 to transfers of partnership interests that those sections do not cover. Section 741 deals with the “recognition and character of gain or loss on sale or exchange” of an interest in a partnership. Far from being comprehensive, this section is limited to sales and exchanges. There are many types of transfers which do not constitute “sales or exchanges,” such as dispositions by gift or bequest, charitable contributions, transfers upon death of a partner, liquidations, or corporate distributions.
 
 See
 
 2 W. McKee, W. Nelson & R. Whitmire,
 
 Federal Taxation of Partnerships and Partners
 
 ¶ 15.05 (1977).
 

 There is no reason to conclude that Congress intended thus to limit the reach of the recapture provision of section 1250. Two separate subsections of that section state that the section applies “notwithstanding any other provision of this subtitle.” 26 U.S.C. §§ 1250(a)(1), 1250(i). The recapture provisions of section 751 have only limited scope. The objective of section 1250 of preventing the diversion of ordinary income into capital gain
 
 (see supra
 
 p. 280), is just as applicable to other forms of disposition of partnership property, such as the complete liquidation here involved, as to sales and exchanges.
 

 C. Holiday Village also contends that under the government’s view, its stockholders may be subjected to double taxation upon the disposition by the partnership of the real property with respect to which the accelerated depreciation has been recaptured. The argument is that unless the basis in the real property may be increased to reflect the recaptured depreciation, the partnership gain upon its disposition of the real property, which will be taxable to its partners (who include stockholders of Holiday Village), would include the accelerated depreciation that already has been taxed; and that it cannot be said definitively that the partnership will be permitted thus to increase the basis.
 

 The question of the basis in the real property is not before us in this case, which involves only the liability of Holiday Village for recapture of the accelerated depreciation. The need to determine the basis of the partnership will arise only if, upon the partnership’s disposition of the real property (or upon an individual partner’s disposition of his interest in the partnership), the partnership elects to increase the basis pursuant to section 743 and the Commissioner determines that the partner’s basis in the real property has not been increased. We cannot base our decision, even in part, of the issue before us, upon such speculation about what the Commissioner may do.
 

 At oral argument, the representative of the Department of Justice stated that, although he could not bind the Commissioner, he believed that the accelerated depreciation the Commissioner has recaptured could increase the basis in the partnership property of Holiday Village’s stockholders (who became partners upon the company’s liquidation). That conclusion was hardly surprising in view of both its fairness and the fact that in the 1984 legislation discussed below that adopted the Commissioner’s position in this case, any recaptured excessive depreciation could increase the partnership basis in the affected property. Tax Reform Act of 1984, Pub.L. No. 98-
 
 *282
 
 369, § 75, 98 Stat. 494 (to be codified at 26 U.S.C. §§ 386 & 761(e)).
 

 D. In the Tax Reform Act of 1984, Congress provided that for purposes of determining the amount of gain recognized by a corporation on distribution of a partnership interest, the distribution shall be treated in the same manner as if it included the corporation’s proportionate share of the recognition property of the partnership. The Joint Committee on Taxation report on the legislation referred to the Claims Court decision in this case, Joint Committee on Taxation, 98th Cong., 2d Sess.,
 
 General Explanation of the Revenue Provisions of the Deficit Reduction Act of1984,
 
 at 237 (Comm.Print 1984), and stated that “No inference is to be drawn from Congress’s action regarding the treatment of the transactions described above under prior law.”
 
 Id.
 
 at 239. We refer to this legislation only to show that the result we here reach is not inconsistent with what Congress recently viewed as the appropriate tax treatment of this situation. Indeed, the reasons Congress gave for adopting the provision closely parallel the reasoning of this opinion:
 

 If an interest in a partnership which holds recapture property could be distributed, or sold in liquidation, without being subject to recapture, the corporation would have effectively deferred (and perhaps avoided) the imposition of recapture tax. Thus, the corporation would have benefitted from the tax advantages of depreciation (including accelerated depreciation) without being subject to recapture as would [be] the case if the corporation distributed the recapture property directly to its shareholders. Congress believed that in this case, as elsewhere, the use of a partnership form should not result in greater tax benefits than would be available in the case of direct ownership.
 

 Id.
 
 at 238.
 

 CONCLUSION
 

 The judgment of the United States Claims Court is affirmed.
 

 AFFIRMED.