**HOUSTON OIL AND MINERALS CORPORATION, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 90–4068.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1991.

---

Charles Bricken, Gary R. Allen, David English Carmack, Shirley D. Peterson, U.S. Dept. of Justice, Tax Div., Peter K. Scott, I.R.S., Washington, D.C., for respondent-appellant.

Wm. C. Griffith, Baker & Botts, Houston, Tex., for petitioner-appellee.

William M. Linden, Charles D. Tetrault, Vinson & Elkins, Houston, Tex., for amicus curiae Louisiana Land & Exploration Co.

Before THORNBERRY, DAVIS and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Commissioner of Internal Revenue (Commissioner) appeals the Tax Court's conclusion that overriding royalty interests in oil and gas leases are not "oil, gas, or geothermal property" under § 1254 of the Internal Revenue Code.[1] We affirm.

## I.

Houston Oil and Minerals Corporation (HOMC) held mineral leases covering properties in the United States and several foreign countries. Between January 1, 1976, and April 24, 1981, HOMC explored and developed many of these properties, incurring substantial intangible drilling and development costs (IDCs). The Internal Revenue Code allows taxpayers to deduct IDCs. See 26 U.S.C. § 263(c). HOMC exercised that option.

In 1980 Tenneco agreed to acquire all of HOMC's outstanding stock in exchange for stock in Tenneco. To reduce the number of shares Tenneco would have to issue and to permit HOMC's shareholders to retain a direct equity interest in HOMC's mineral leases, HOMC carved out overriding royalty interests in its oil and gas leases and conveyed those interests into a trust. The trust agreement divided beneficial interest in the trust among HOMC's shareholders on a pro rata basis according to the number of shares held by each shareholder.

Just after HOMC created the trust, a Tenneco subsidiary merged into HOMC. HOMC survived the merger as a wholly owned subsidiary of Tenneco. HOMC still operates most of the leasehold interests from which it carved the overriding royalties.

The Commissioner reviewed HOMC's 1980 and 1981 tax returns and determined

---

1. All statutory references are to the Internal Revenue Code of 1954 (Title 26 of the United States Code) as amended and in effect during the years at issue in this case. Congress has since amended the Code and redesignated it as the Internal Revenue Code of 1986.

that the transfer of overriding royalties to the trust was a disposal of property under § 1254 of the Internal Revenue Code. Section 1254 requires taxpayers who dispose of "oil, gas, or geothermal property" to recognize a gain (*i.e.*, ordinary income) for "the aggregate amount of expenditures after December 31, 1975, which are allocable to such property and which have been deducted as intangible drilling and development costs under § 263(c) by the taxpayer or any other person...."

HOMC petitioned the Tax Court for redetermination of the deficiency. The parties stipulated to the facts of the case, and the only question was whether the overriding royalty interests are "oil, gas, or geothermal property." The Tax Court held that overriding royalty interests are not "oil, gas, or geothermal property." HOMC, therefore, did not recapture any of the IDCs. The Commissioner appeals.

## II.

■■■ We review Tax Court decisions under the same standard used for civil actions decided by a federal district court. *See* 26 U.S.C. § 7482(a). Because the parties stipulated to the facts of this case, we need not examine the Tax Court's factual determinations. We review the Tax Court's conclusions of law de novo. *See Dresser Indus. v. Comm'r.*, 911 F.2d 1128, 1132 (5th Cir.1990).

The recapture provision in § 1254(a)(1) applies only to "oil, gas, or geothermal property." [2] To qualify as "oil, gas, or geothermal property," the overriding royalty interests must meet two requirements

under § 1254(a)(3): (1) the royalty interests must fall within the definition of "property" in Code § 614; and (2) the royalty interests must be property to which the IDCs "are properly chargeable." [3]

Code § 614 defines "property" as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land." The Treasury Regulation interpreting this provision states that the term "interest" includes, among other things, overriding royalties. *See* Treas. Reg. § 1.1614–1(a). The overriding royalty interests at issue in this case fit comfortably within the definition of "property" in § 614, thus meeting the first requirement of "oil, gas, or geothermal property."

To meet the second requirement of "oil, gas, or geothermal property," the royalty interests must be property to which the IDCs "are properly chargeable." The Tax Court concluded that the overriding royalties are not "oil, gas, or geothermal property" because IDCs "are properly chargeable" only against working interests and royalties are nonworking interests. The Commissioner concedes that IDCs are properly chargeable only against working interests, that overriding royalties are nonworking interests, and that HOMC retained 100 percent of the working interests in the oil and gas leases. On the other hand, HOMC admits that the overriding royalties *were* part of the working interest when the IDCs were deducted (*i.e.*, before carve-out and disposition of the overriding royalties). The only question, therefore, is whether the Tax Court correctly concluded that a property interest must be a working inter-

**2.** Section 1254(a)(1) provides:

(a) General Rule.
(1) Ordinary income. If oil, gas, or geothermal property is disposed of after December 31, 1975, the lower of
(A) the aggregate amount of expenditures after December 31, 1975, which are allocable to such property and which have been deducted as intangible drilling and development costs under section 263(c) by the taxpayer or any other person and which (but for being so deducted) would be reflected in the adjusted basis of such property, adjusted as provided in paragraph (4), or
(B) the excess of

(i) the amount realized (in the case of a sale, exchange, or involuntary conversion), or the fair market value of the interest (in the case of any other disposition), over
(ii) the adjusted basis of such interest,
shall be treated as gain which is ordinary income. Such gain shall be recognized notwithstanding any other provision of this subtitle.

**3.** Section 1254(a)(3) provides:
(3) Oil, gas, or geothermal property. The term "oil, gas, or geothermal property" means any property (within the meaning of section 614) with respect to which any expenditures described in paragraph (1)(A) [of Section 1254(a)] are properly chargeable.

est at the time of its disposition to qualify as "oil, gas, or geothermal property." We conclude that the Tax Court was correct.

■ We find the plain language of § 1254(a)(3) dispositive. That section defines "oil, gas, or geothermal property" as "any property (within the meaning of section 614) with respect to which any expenditures described in [section 1254(a)(1)(A)] *are* properly *chargeable.*" (emphasis added). The present tense verb—"are chargeable"—requires us to consider the nature of the property interest at the moment of disposition, not at the time the IDCs are charged against the interest. Because IDCs are *not* properly chargeable to overriding royalty interests, those interests are not "oil, gas, or geothermal property" and HOMC need not recognize a gain.

The Commissioner urges us to ignore verb tense and instead focus on the expenditures referred to in § 1254(a)(3), *i.e.*, the expenditures described in § 1254(a)(1)(A).[4] Those expenditures include all IDCs that "have been deducted" and that "would be reflected in the adjusted basis of the property" if they had not been deducted. The IDCs at issue here meet both of those requirements. The Commissioner argues that any time IDCs meet those requirements, they must be recaptured. But this assertion sidesteps the fundamental question underlying this case: *which property* must be sold before the IDCs are recaptured? The two tests in § 1254(a)(1)(A) determine only the *amount* of IDCs to be recaptured; they do not determine whether that amount is "properly chargeable" to any particular property interest.

The Commissioner suggests that our interpretation of § 1254 will lead to abuse. According to the Commissioner, taxpayers wanting to avoid recapture could carve out an overriding royalty interest equal to 99 percent of the net profits from the working interest and sell that royalty interest without recognizing any gain. Although the taxpayer would recapture previously deducted IDCs upon disposition of the working interest, the amount of recapture is limited under § 1254(a)(1)(B) to the amount of gain realized. In effect, therefore, the taxpayer would recapture few if any IDCs because the working interest, now devoid of 99 percent of the revenue interest, would have little gain.

Although this abusive transaction is a hypothetical possibility, the Commissioner concedes that HOMC is not attempting to abuse the tax law in this case. Courts have also developed methods—for example, the step-transaction doctrine[5] and the substance-over-form doctrine[6]—to overcome abuse in exceptional cases. We will not depart from the plain words of § 1254 based on the uncertain possibility of abuse in a small number of cases.

In summary, the parties agree that the IDCs were not chargeable against the overriding royalty interests at issue here when those interests were transferred. The plain words of Code § 1254(a)(3) lead us to conclude that we must consider the nature of the interest at the time of transfer and not at the time the expenses were deducted. Because IDCs are not properly chargeable to those nonworking interests, those interests are not "oil, gas or geothermal property" and HOMC need not recognize a gain.

For the foregoing reasons, we AFFIRM the decision of the Tax Court.

AFFIRMED.

---

**4.** *See supra* note 3.

**5.** *See Security Indus. Ins. Co. v. United States,* 702 F.2d 1234, 244 (5th Cir.1983) ("Under the step transaction doctrine 'the tax consequences of an interrelated series of transactions are not to be determined by viewing each of them in isolation but by considering them together as component parts of an overall plan.'") (quoting *Crenshaw v. United States,* 450 F.2d 472, 475 (5th Cir.1971).

**6.** *See Freytag v. Comm'r,* 904 F.2d 1011, 1015 (5th Cir.1990) ("The fundamental premise underlying the Internal Revenue Code is that taxation is based upon a transaction's substance rather than its form. Thus sham transactions are not recognized for tax purposes....").