**PETROLEUM CORPORATION OF TEXAS, INC. and Subsidiaries, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–1620.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1991.

Emily A. Parker, Dennis J. Grindinger, Thompson & Knight, Dallas, Tex., for plaintiffs-appellants.

Teresa T. Milton, Gary R. Allen, Chief, Kenneth L. Greene, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for defendant-appellee.

Before BROWN, SMITH and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs–Appellants, Petroleum Corporation of Texas (Petco) and its subsidiaries (collectively, Taxpayers), sued for refund of income taxes paid for the tax periods ending April 20, 1981, and November 30, 1983, in the total amount of $3,749,291, and for statutory interest. The district court denied Taxpayers' request for refund, holding that the corporations' liquidating distributions to shareholders of the corporations' interests in three partnerships should be treated for tax purposes as distributions of the specific property owned by the three partnerships and thus subject to the recapture provisions of Sections 1245, 1250, & 1254 of the Internal Revenue Code of 1954 (the Code). Finding that the district court erred in treating the distributions of the partnership interests as distributions of the specific property held by the partnerships, we reverse the district court's judgment and remand this case for calculation of the amount of the refund owed to Taxpayers, and for entry of judgment for Taxpayers accordingly.

## FACTS AND PROCEDURAL HISTORY

Petco was the parent corporation of an affiliated group of corporations engaged in (1) the exploration, development and production of oil and gas; (2) the acquisition of producing oil and gas properties, royalties and minerals; and (3) the conduct of certain real estate activities. Petco was incorporated under the laws of Texas, and was dissolved on December 1, 1983.

In December of 1982, Taxpayers had adopted plans of complete liquidation in accordance with Code Section 337 and, as required, all assets were distributed to its shareholders within twelve months. In accordance with the plan of liquidation, Taxpayers' larger, more valuable oil and gas properties were sold and the shares of 112 minority shareholders were redeemed. Taxpayers' remaining assets were transferred to three separate limited partnerships in order to (1) retain the previous segregation of the Taxpayers' diverse activities and operations, and (2) provide a mechanism for operating such assets in a cost effective manner in the future. The three limited partnerships were PC, Ltd., Petco Limited, and Hubbard Development Company (HDC). The government acknowledged that the partnership arrangement had a valid business purpose and was not an arrangement entered into in avoidance of taxes.

During the twelve months' term of the Code Section 337 liquidation, the bulk of Taxpayers' remaining specific properties were transferred to the three partnerships, as follows: In May of 1983, Taxpayers contributed their fractional interests in all mineral, royalty and other similar non-operating properties to Petco Limited; in July of 1983, Taxpayers contributed their fractional interests in all operating oil and gas properties to PC, Ltd., along with its interest in three tax partnerships; and in October of 1983, Taxpayers contributed their interests in all real properties (other than oil and gas properties) to HDC. Subsequent to the contributions of the specific properties to the respective partnerships, Taxpayers made liquidating distributions of both the general partner and limited partner interests in the three partnerships to the shareholders.

On Taxpayers' corporate income tax returns for 1983, their final, "short" tax year, Taxpayers reported ordinary income of $9,061,710 attributable to the recapture amounts classified as unrealized receivables under Code Section 751(c) as a result of the distributions of interests in the three partnerships. Taxpayers timely filed

amended corporate tax returns for 1981 and 1983 claiming (1) refunds of taxes attributable to the overstated income shown on the original 1983 returns, and (2) a refund of certain 1981 taxes attributable to a carryback of net operating loss in Taxpayers' final taxable year. Taxpayers based their claims for refund on the theory that the liquidating distributions to shareholders of general partner and limited partner interests in the three partnerships did not trigger the recognition of recapture income attributable to specific assets held by those partnerships. Taxpayers urged that those distributions were exempt from recognition under Code Section 336(a) and were not made taxable under the exceptions for transfers of specific property under Code Sections 1245, 1250 and 1254.

The IRS failed to respond to Taxpayers' claim for refund within six months so a refund suit was filed by Taxpayers in district court. Eventually, both the government and Taxpayers filed motions for summary judgment. The district court denied Taxpayers' refund claims and dismissed their suit. Taxpayers timely appealed.

## ANALYSIS

Under Code Section 336, *as in effect for the taxable years in question,* a corporation distributing property to its shareholders in a complete liquidation would not recognize taxable gain or loss. *See* 26 U.S.C. (I.R.C.) § 336(a). Code Sections 1245, 1250, and 1254, however, provided three statutory exceptions to this general non-recognition rule. For the years in question, those three Code sections expressly provided that the inherent gain attributable to certain types of property would be recognized or "recaptured" by the corporation upon disposition of assets of the types defined in those Code sections. Under Code Section 1245, recapture income was recognized upon the disposition of depreciable personal property (Section 1245 property). *See* I.R.C. § 1245(a)(3). Under

Code Section 1250, recapture income was recognized upon the disposition of depreciable real estate (Section 1250 property). *See* I.R.C. § 1250(c). Under section 1254, recapture income was recognized upon the disposition of depletable oil, gas and geothermal property (Section 1254 property). *See* I.R.C. § 1254(a)(3); *see also Houston Oil and Minerals Corp. v. Commissioner,* 922 F.2d 283, 285 (5th Cir.1991).

Separate and distinct from those sections of the Code which required recognition of recapture income upon disposition of the Section 1245 property, Section 1250 property, or Section 1254 property, Code Sections 741 and 751 required a partner to recognize gain or loss (and any recapture income) upon the *sale* or *exchange* of the partner's interest in a partnership. *See* I.R.C. §§ 741 & 751(a). The government contended that Taxpayers' distribution of the partnership interests subjected the Taxpayers to recapture tax under Code Sections 741 and 751.

*Distribution of Partnership Interest under Code Sections 1245, 1250 and 1254*

Whether Taxpayers were required to recognize recapture income under Code Sections 1245, 1250 and 1254 depends on whether the properties distributed were of the types listed in one or more of those Code sections as an exception to non-recognition. The district court, following the reasoning of the Federal Circuit in *Holiday Village Shopping Center v. United States,*[1] 5 Cl.Ct. 566 (1984), aff'd, 773 F.2d 276 (Fed.Cir.1985), determined that, by applying the "aggregate" or "conduit" theory of partnership rather than the "entity" theory, a partner's transfer of an interest in a partnership was actually a transfer of the underlying specific properties owned by the partnership. Therefore, the district court treated Taxpayers' distributions of partnership interests "as if" they were distributions of specific properties, holding that the

---

**1.** We do not intend to create a conflict between this circuit and the federal circuit when we find *Holiday Village* inapposite to the instant case. Rather, we distinguish this case from *Holiday Village* on the facts. Here, as conceded by the government, all transactions had valid business purposes and were not conceived or entered into in avoidance of taxes. That cannot be said with regard to facts of *Holiday Village.*

liquidating distributions were subject to recapture. We disagree with that treatment.

### Distribution of Recapture Property

■ By virtue of their unambiguous, express wording, the statutory exceptions to non-recognition of income by corporations on liquidating distributions to shareholders clearly apply only to distributions of depreciable personal property, depreciable real property and depletable oil, gas, and geothermal property. *See* I.R.C. §§ 1245(a)(3), 1250(c), 1254(a)(3). Partnership interests are not among the specific properties listed in any of the subject Code sections as being subject to recapture upon distribution. As those three Code sections contain exceptions to the general rule, they must be narrowly construed. A corporation's distribution of property is protected from tax on recapture income unless one of the express statutory exceptions apply. Thus, because, *at the time of Taxpayers' distributions in 1983*, an interest in a partnership was not one of the specifically listed exceptions to the general rule of non-recognition of gain (including recapture income) on liquidating distributions of corporate property to shareholders, any recapture income that Taxpayers might otherwise be deemed to have derived upon such distributions was not subject to tax.

The government argues that at the times that Taxpayers had held the specific properties—properties which later were held by the three partnerships when the corporations distributed interests in those partnerships to the shareholders—such specific properties were clearly properties defined in sections 1245, 1250 and 1254; and that, because there was no change in the character of the properties that were ultimately transferred from the Taxpayers to the three partnerships, those properties are still recapture property. Therefore, the government argues, despite Taxpayers labeling the liquidating distributions as transfers of partnership interests, they were actually distributions of recapture property.

■ Taxpayers do not dispute that, at the times they claimed deductions for de-

preciation and intangible drilling and development costs (IDC's) on the specific properties, those properties were recapture property as defined in Code Sections 1245, 1250 and 1254. But, argue the Taxpayers, for purposes of determining whether recapture was required upon a disposition of the property, the nature of the property interest must be determined as of the time the distribution is made and not as of the times that the depreciation and IDC deductions on the property was taken. *See Houston Oil*, 922 F.2d at 285–86. We agree.

At the times during Taxpayers' liquidations when they made distributions to the shareholders, the nature of the properties distributed were *partnership interests*, not specific recapture properties—by then those specific properties were held by the three partnerships themselves. The government has no legal basis for disregarding both the form and substance of Taxpayers' transfers of the specific assets to the three partnerships, or for disregarding the form and substance of the Taxpayers' subsequent transfers of interests in the three partnerships as distinguished from interests in the specific properties that were then owned by the three partnerships. Whether recapture income on the specific properties is ever taxed, such as upon transfer by the partnerships, is immaterial to this consideration. Any income otherwise deemed to be realized by Taxpayers on liquidating distributions of the partnership interests was not subject to tax on recapture of depreciation and IDC deductions previously taken by Taxpayers on the specific properties eventually held by the partnerships.

To repeat our earlier observation, at the time Taxpayers' liquidating distributions of its interests in the partnerships were made, the Code's recapture provisions did not list or define partnership interests as recapture property subject to tax by way of express exceptions to the general non-recognition rule. Likewise, there was no recapture purpose apparent from the language of the recapture provisions of Code Section 336. Neither was there any Code authority extant that would have authorized ignoring

or "looking through" the partnerships to conclude, fictitiously, that the corporations were distributing assets then held in partnership solution as distinguished from distributing interests in the partnerships themselves. Federal income tax law is replete with examples of applying the entity theory of partnerships on some occasions while applying the conduit or aggregate theory on others. It suffices that there is no authority for the government's expedient position that use of the conduit theory is authorized and that such use should somehow override the clear language of the Code.

We find it significant that not until well after Taxpayers' liquidating distributions had been made did Congress enact Code Section 386, specifically requiring a corporation which, after March 31, 1984, distributes an interest in a partnership holding recapture property, to recognize its share of gain attributable to such property. Had the enactment of Code Section 386 been merely a codification of existing law, there would have been no reason for Congress to specify, as it did, that the new provision would only be applied prospectively. Thus, the Code provisions which were applicable when Taxpayers made the 1983 liquidating distributions of interests in partnerships holding recapture property simply do not support the district court's finding that, for tax purposes, Taxpayers were deemed to have distributed property subject to the Code's recapture provisions. If anything, the enactment of Code Section 386 in its 1984 form, and the way it was enacted with prospective applicability only, confirm Taxpayers' contention that before the subject amendment the law was not as urged by the government.

### Distribution as a Sale or Exchange under Code Sections 741 & 751

 The distribution of a partnership interest in complete liquidation of a corporation is neither a sale nor an exchange of such interest because the distributing corporation receives neither funds nor property in return for relinquishing its interest in the partnership. *See Jackson v. Commissioner,* 708 F.2d 1402, 1405 (9th Cir.1983);

*see also Holiday Village,* 773 F.2d at 281. Accordingly, because Taxpayers neither sold nor exchanged the partnership interests when distributing such interests to shareholders in complete liquidation, neither Code Section 741 nor Code Section 751 applies to require Taxpayers to recognize recapture income.

### CONCLUSION

Reading the clear and unambiguous wording of the applicable Code sections which were in effect at the time of the liquidating distributions, and applying recognized rules of statutory interpretation, we find that the district court erred in determining that, for tax purposes, Taxpayers should be deemed to have made taxable transfers of specific property when they made liquidating distributions of their partnership interests to the shareholders, requiring Taxpayers to recognize recapture income. We therefore REVERSE the judgment of the district court, and REMAND this case for the purpose of calculating the refund due Taxpayers and entering judgment in their favor for such amounts, plus statutory interest.

JOHN R. BROWN, Circuit Judge, concurring.

With some misgivings I concur.

First, I cannot so easily dispose of the contrary holding by the Federal Circuit in *Holiday Village Shopping Center, Inc. v. United States,* 773 F.2d 276 (Fed.Cir.1985). I agree that there was ample basis, (i) for the conclusion that by closeness of holdings the partnership should not be viewed as an independent taxable entity and, (ii) for the implication that the transaction was conceived and executed as a purposeful hope to evade taxes. See *id.* at 279–80. But that Court did not rely on such circumstance as decisive. Indeed, it went on to hold several significant things. It relied on the House Conference Committee Report assertion that, while for some purposes under Subchapter K the "entity" approach is used, "[n]o inference is intended ... that ... for the purpose of applying other provisions of ... [the code] ... the concept of

the partnership as a collection of individuals is more appropriate for such provisions." [1] The Court proceeded to hold that for § 1250 it is more appropriate to treat the partnership as an aggregate or "collection of individuals" than as a "separate entity." *Id.* at 279.

The Court went on:

Holiday Village thus benefited from the deductions to the same extent as if it had owned the depreciable assets directly, but now seeks to avoid recapture on the theory that it did not own those assets.

\* \* \* \* \* \*

Holiday Village offers no convincing reason to support this anomalous result. Its argument is a highly technical one that turns largely on the form of the transaction, i.e., that what it distributed to its stockholders on liquidation was an interest in the partnership and not the underlying partnership property which gave that interest its value and which was the subject of the depreciation that it previously had utilized to reduce its taxable income.

\* \* \* \* \* \*

We conclude that, for the reasons given above, it is appropriate in this case to disregard the partnership entity and treat the liquidating distribution by Holiday Village to its stockholders of its tax interest in the partnership as a distribution of the underlying partnership assets themselves.

Some courts—certainly not the court for the Federal Circuit—might dismiss these somber holdings as mere dicta. If that is really our view, perhaps we should forthrightly say so, in order that the High Court can see whether, in fact, there is an outright conflict meriting possible certiorari.

Additionally, I cannot escape the feeling that the result of the court's decisions comes close to an instance of "now you see it, now you don't" that: properly meeting all of the § 1254 requirements, somehow, someway, by our declarations, undergoes juridical transmutation into a partnership interest immune to recapture.

Although, on the high road of principles, we ought not to be swayed by fiscal consequences, the case remains—at least from my perception—a determination that by the stroke of the scrivener's pen, a substantial ($9 million) profit subject to a $3 million income tax is turned into a recoverable (and *distributable*) profit ($3 million).

With no change in the nature, or kind, of property, the corporation—and its distributee shareholders—are afforded this $3 million difference over what would have been the case were the fractional mineral interests distributed directly.

I do concur without reservation that the creation of the partnerships was for sound business reasons without any motive for tax avoidance. I concur also that the 1984 Amendment (§ 386) is not significant.

---

1. H.R.Conf.Rep. No. 2543, 83rd Cong.2d Sess. 59, *reprinted in* 1954 U.S.Code Cong. & Admin. News 5280, 5319–20.