```
              ------------
              No. 95-2110
              ------------
```

Brown Group, Inc. and          *
its Subsidiaries,              *
                               *
              Appellant,       *
                               *
    v.                         *    Appeal from the United States
                               *    Tax Court
Commissioner of                *
Internal Revenue,              *
                               *
              Appellee.        *

```
              ------------
```

Submitted:  December 14, 1995

Filed:  January 25, 1996

```
              ------------
```

Before FAGG, Circuit Judge, GARTH,[*] Senior Circuit Judge, WOLLMAN,
Circuit Judge.


GARTH, Senior Circuit Judge.

    This is an appeal from the en banc decision by the United
States Tax Court (the "Tax Court"), assessing taxes against
appellant, the Brown Group, Inc. ("the Brown Group") and its
subsidiaries, on the commission distributions received by the Brown
Group's wholly-owned Cayman Islands subsidiary, Brown Cayman, Ltd.
("BCL"), under Subpart F of the Internal Revenue Code (codified at
26 U.S.C. § 951 et seq.).

    The issue we address on appeal is whether BCL's distributive

---

    *.   Honorable Leonard I. Garth, Senior U.S. Circuit
    Judge for the United States Court of Appeals for the
    Third Circuit, sitting by designation.

share of a foreign partnership's earnings (Brinco partnership) should be taxed to the Brown Group under Subpart F of the Internal Revenue Code. We hold that a foreign partner's distributive share of foreign partnership income cannot be deemed to be "Subpart F income" where the commissions at issue did not constitute "Subpart F income" under the pre-1987 statute, 26 U.S.C. § 954(d)(3), in that the foreign partnership (Brinco) did not control a controlled foreign corporation such as BCL. Accordingly, we vacate the decision of the Tax Court assessing an income tax deficiency against the Brown Group for the tax year ending November 1, 1986.

## I.

The Brown Group is the publicly traded parent corporation of an affiliated group of corporations filing a consolidated income tax return. The Brown Group, whose principal place of business is St. Louis, Missouri, manufactured and sold footwear in the United States. The Brown Group imported footwear from Brazil and other countries and, up until 1985, used a number of independent agents to purchase Brazilian-manufactured footwear.

The Brown Group includes a wholly owned subsidiary, Brown Group International, Inc. ("BGII"), a Delaware corporation. BGII, in turn, is the parent of a wholly owned subsidiary, BCL, a Cayman Islands corporation. The parties have stipulated that BGII was a "United States shareholder" of BCL, and that BCL was a "controlled foreign corporation" ("CFC") within the meaning of the pre-1987 statutes, 26 U.S.C. §§ 957(a), 954(d)(1). Indeed, BCL is a CFC

2

even under the post-1987 section 954(d)(1) as amended.

In 1985, the Brown Group decided to consolidate its buying power in Brazil by using only one purchasing agent there. The Brown Group formed Brinco P/S ("Brinco"), a limited foreign partnership, to be that purchasing agent, with the view toward attracting Mr. Ted Presti and Mr. Delcio Birck to purchase Brazilian footwear exclusively for the Brown Group. Brinco was structured as a partnership because this allowed the Brown Group to pay Presti a salary higher than that allowed within the Brown Group's existing payroll structure. It also allowed Presti and Birck to have entrepreneurial interests in Brinco's operations; and enabled the partners to avoid Brazilian currency instability.

Presti was the managing partner of Brinco. BCL held an 88% interest in Brinco, with the other 12% held by the other partners.[2]

For ease in understanding the relationship of the various companies to which we have made reference, we include a schematic diagram of the various enterprises. This diagram appeared in both parties' briefs on appeal.

---

2.    Presti owned Pidge, Inc., which in turn held a wholly-owned subsidiary, T.P. Cayman, Ltd. T.P. Cayman held a 10% interest in Brinco. Birck held a 2% interest in Brinco.

```
+)))))))))))))),
* BROWN GROUP,  *              TED PRESTI
* INC.          *                   *
.)))))))O)))))))-                    *
         * 100%                      * 100%
+)))))))))2))))))))))),      +)))))))))2)))))))))),
* BROWN GROUP         *      *    PIDGE, INC.     *
* INTERNATIONAL, INC* *      *                    *
.)))))))))O)))))))))-        .)))))))))O)))))))))-
         * 100%                      * 100%
  +)))))))2)))))))),        +)))))))))2))))))))))),
  * BROWN CAYMAN, *         *  T.P. CAYMAN, LTD.  *    DELCIO BIRCK
  * LTD.         *          *                     *          *
  .)))))))O)))))))-         .)))))))))O))))))))))-         *
         * 88%                      * 10%              * 2%
         *                   64444444444N44444444447       *
    .))))))))))))))M       BRINCO         K)))))))))-
    5     PARTNERSHIP     5
    94444444444444444448
```

During 1985 and 1986, Brinco served as the purchasing agent for BGII with respect to footwear manufactured in Brazil.  BGII paid Brinco a 10% commission for acting as its Brazilian purchasing agent.  This commission was based on the purchase price of the footwear.  BGII included the commissions paid to Brinco in its cost of goods sold.  All of Brinco's income consisted of commission income.  BCL, as a partner owning a 88% interest in Brinco, received a distributive share of Brinco's income.  Brinco was dissolved on October 31, 1987.

On October 7, 1991, the IRS issued a Notice of Deficiency against the Brown Group in the amount of $388,992.85 for the tax year which ended November 1, 1986, on the ground that BCL's distributive share of Brinco's earnings was "foreign base company sales income" that was includable as "Subpart F income" taxable to the Brown Group under sections 951, 952, 954, and 701-709 of the Internal Revenue Code.

On January 2, 1992, the Brown Group filed a petition for redetermination of the IRS's assessment of an income tax deficiency. The case was tried before Tax Court Judge Julian Jacobs on March 9, 1993. On April 12, 1994, Judge Jacobs filed an opinion in favor of the Brown Group.

The IRS moved for reconsideration by motion filed May 12, 1994, contending that Judge Jacob's opinion was "unnecessarily broad and can reasonably be interpreted in a manner that effectively repeals virtually all of the subpart F provisions of the Code." The motion for reconsideration was granted on September 27, 1994, and the case was resubmitted to the entire Tax Court.

Without further briefing or argument, the Tax Court ordered that decision be entered for the IRS on January 25, 1995. Seven judges (Halpern, Hamblen, Parker, Cohen, Swift, Parr, and Beghe, JJ.) joined in the majority opinion. Of the seven judges, two judges (Swift and Beghe, JJ.) filed or joined in separate concurrences. Two judges who had not joined the majority opinion (Ruwe and Chiechi, JJ.) each filed separate concurrences. Three judges (Jacobs, Chabot, and Laro, JJ.) joined in a dissent authored by Judge Jacobs.

On January 30, 1995, the Tax Court entered its decision assessing an income tax deficiency in the amount of $388,992.85 against the Brown Group for the tax year ending November 1, 1986. The Brown Group has appealed to this Court.

II.[3]

A.

Under Subpart F of the Internal Revenue Code, codified at 26 U.S.C. § 951 et seq., a United States shareholder[4] that controls a foreign corporation for an uninterrupted period of thirty or more days must include in its taxable gross income, its pro rata share of the controlled foreign corporation's "Subpart F" income. 26 U.S.C. § 951(a)(1).[5]

"Subpart F income" is defined as four types of income under section 952(a). The only type of "Subpart F income" involved in this case is "foreign base company income." 26 U.S.C. § 952(a)(2).

There are five different types of "foreign base company income," as defined under section 954(a). The only type involved in this case is "foreign base company sales income."

"Foreign base company sales income" is defined in relevant

---

3. Because the tax year at issue is 1986, the Internal Revenue Code that was in effect in 1986 applies to this case. Therefore, except as otherwise identified, all of the references to the Internal Revenue Code in this opinion are to the version of those sections of the Code that existed in 1986.

4. A "United States shareholder" is a "United States person" who owns or is considered as owning 10% or more of the total combined voting power of all classes of stock entitled to vote, of a controlled foreign corporation. 26 U.S.C. § 951(b). A "United States person" includes a citizen or resident of the United States, a domestic partnership, a domestic corporation, and certain trusts and estates. 26 U.S.C. §§ 957(d), 7701(a)(30).

5. A "controlled foreign corporation" is any foreign corporation of which more than 50% of the total combined voting power of all classes of stock entitled to vote is owned or is considered as owned by "United States shareholders" on any day during the taxable year. 26 U.S.C. § 957(a).

6

part as:

> Income . . . derived in connection with the purchase of personal property from any person and its sale to a <u>related person</u>, or the purchase of personal property from any person on behalf of a <u>related person</u> where --
>
>> (A) the property which is purchased . . . is manufactured, produced, grown, or extracted outside the country under the laws of which the controlled foreign corporation is created or organized, and
>>
>> (B) . . . in the case of property purchased on behalf of a <u>related person</u>, is purchased for use, consumption, or disposition outside such foreign country.

26 U.S.C. § 954(d)(1) (emphases added).

Under the version of section 954(d)(3) in effect for the taxable year of 1986, a "related person" is defined as:

> (A) an individual, <u>partnership</u>, trust, or estate which <u>controls</u> the controlled foreign corporation; or (B) a corporation which <u>controls</u>, or is <u>controlled by</u>, the controlled foreign corporation; or (C) a corporation which is <u>controlled</u> by the same person(s) which <u>control</u> the controlled foreign corporation.

26 U.S.C. § 954(d)(3) (emphases added). We are concerned here only with section 954(d)(3)(a) which requires that in order to be a "related person," Brinco, a foreign partnership, must control a controlled foreign corporation - in this case, BCL. For purposes of this section, "control" is defined as "the ownership, directly or indirectly, of stock possessing more than fifty percent of the total combined voting power of all classes of stock entitled to vote." <u>Id.</u>

### B.

In this case, the parties have stipulated that BGII is a "United States shareholder" and BCL is a "controlled foreign

corporation." It is undisputed that Brinco <u>was not</u> a "related person," as defined in 26 U.S.C. § 954(d)(3), to either BCL or BGII. It is also undisputed that BGII <u>was</u> a "related person" to BCL. The IRS has conceded that Brinco was not a sham partnership.

## III.

The present case boils down to a very discrete question of law: whether BCL's distributive share of Brinco's partnership earnings (commissions) constituted "Subpart F income," under 26 U.S.C. § 954(d)(3), given that the commissions did not constitute "Subpart F income" when earned by Brinco. We exercise <u>de novo</u> review of this question of law. <u>Jacobson v. Commissioner</u>, 963 F.2d 218, 219 (8th Cir. 1992).

We hold that the Tax Court erred in ignoring the partnership entity in characterizing BCL's earnings as taxable "Subpart F income." Instead, we are persuaded by, and adopt, the reasoning and holding of Judge Jacobs's January 25, 1995 opinion which dissented from the Tax Court's <u>en banc</u> opinion.

It is not disputed that under section 954(d)(3), as that statute existed in 1986, Brinco was not a "related person" to either BGII or BCL. Moreover, this conclusion is supported by the plain language of the statute. Brinco is not a corporation. Hence, the only portion of the "related person" definition that could apply to Brinco is that of a "partnership . . . which controls the controlled foreign corporation." 26 U.S.C. § 954(d)(3)(A). However Brinco did not <u>control</u> BCL but rather was

8

controlled by BCL.  Thus, Brinco was not a "related person" to BGII.  It follows therefore that BGII was not a person "related" to Brinco.[6]

Because Brinco earned its commission income on behalf of an unrelated person, BGII, that income was not "foreign company sales income" for purposes of Subpart F.  Given that partnership income is characterized at the partnership level, the income earned by Brinco retained its character of being not "Subpart F income" when distributed to BCL.  Accordingly, BGII (and thus its parent, the Brown Group), under the pre-1987 version of section 954(d)(3), cannot be assessed income tax on Brinco's partnership earnings which were distributed to BCL.

We find this analysis to be consistent with the well-established principle that income is to be characterized at the partnership level and that such income retains its character when distributed to the individual partners.

In United States v. Basye, 410 U.S. 441 (1973), for example, the Supreme Court held that individual partners must include as taxable income, their distributive share of payments made to a

---

6.    At oral argument the IRS argued that BGII is a "related person" because it is related to BCL, and that Brinco was therefore earning its commission income "on behalf of" a "related person."  The IRS provides no authority for its conclusion that by "related person," the pre-1987 version of section 954(d)(3) meant to reach persons unrelated to the entity allegedly earning the Subpart F income (Brinco).
     Furthermore, even if we were to accept the IRS's broad interpretation of "related person," it is irrelevant to the present inquiry because Brinco is not a controlled foreign corporation, and therefore its income, whether earned on behalf of a "related person" or not, cannot be characterized as Subpart F income.

9

retirement trust fund that was compensation to the partnership for services rendered by the partnership. The Court recited a familiar principle of income taxation to the effect that "partners are taxable on their distributive or proportionate shares of current partnership income irrespective of whether that income is actually distributed to them." Basye, U.S. at 447-48.[7] In the instant case, of course, Brinco's commissions were actually distributed to its partners in the respective proportions to which they were entitled. Hence BCL received 88% of the commissions earned by Brinco.

The Court in Basye further stated that:

[W]hile the partnership itself pays no taxes, 26 U.S.C. § 701, it must report the income it generates and such income must be calculated in largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay a tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income is passed.

Id. at 448. "The legislative history indicates, and the commentators agree, that partnerships are entities for purposes of calculating and filing informational returns but that they are

---

7. In Basye, the Court upheld the partnership principle that the partners were required to pay taxes on their distributive shares even in the situation where none of the partners were eligible to receive the amounts in his contingent or tentative account prior to retirement, even though no interest in the account was deemed to vest in a particular beneficiary before retirement, and even though a partner could forfeit his interest in the retirement trust fund under a number of circumstances, such as by taking pre-retirement severance. Id. at 441, 444-45.

10

conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares." Id. at 448 n. 8. See, e.g., Pleasant Summit Land Corp. v. Commissioner, 863 F.2d 263, 272 (3d Cir. 1988) (in determining whether individual partners can claim losses from partnership's purchase of property, the analysis must be made of the investment from the point of view of the partnership, not of the individual partners), cert. denied, 493 U.S. 901 (1989); Davis v. Commissioner, 74 T.C. 881, 895 (1980) (stating that the language of § 702(b) "has been consistently interpreted to mean that the character of partnership income is determined at the partnership level"), aff'd, 746 F.2d 357 (6th Cir. 1984).[8]

Although our holding may result in a tax windfall to the Brown Group due to the particularized definition of "related person" under the pre-1987 version of section 954(d)(3) of the Internal Revenue Code, such a tax loophole is not ours to close but must rather be closed or cured by Congress. MCA, Inc. v. United States, 685 F.2d 1099, 1104-05 (9th Cir. 1982) (refusing to expand the pre-1987 definition of "related person" to include controlled partnerships). Indeed, Congress has done just that. It closed

---

8.    Section 702(b) of Subpart K provides that:

   The character of any item of income . . . in a partner's distributive share under paragraphs (1) through (7) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.

26 U.S.C. § 702(b) (emphases added).

11

this loophole the following year, in 1987, when it amended section 954(d)(3) to broaden the definition of "related person" to include not only partnerships that <u>control</u> CFC's but also those that <u>are controlled</u> by CFC's or their parents.

Furthermore, for transactions occurring on and after December 30, 1994, Congress for the first time has apparently permitted, in special circumstances not relevant here, the recasting of partnership income under Subpart F. It did so by issuing Treasury Regulation § 1.701-2 ("anti-abuse rule" permitting the IRS to recast partnership transactions that make inappropriate use of Subchapter K rules) and in particular § 1.701-2(e) (providing that the IRS can treat a partnership as an aggregation of its partners in whole or in part as appropriate to carry out the purpose of any provision of the Code or regulations). However, because section 1.701-2 is effective only for transactions on or after May 12, 1994, and section 1.701-2(e) is effective only for transactions on or after December 29, 1994, those provisions cannot apply to this case. Indeed, as we read the regulations, the IRS does <u>not</u> have the power to recast partnership transactions or apply the aggregate approach for transactions occurring prior to these effective dates.

Because the "loophole" in Subpart F taxable income has been closed, the issue that arises in the present case is unlikely to occur again. Under the pre-1987 law applicable to the instant case, however, the Brown Group cannot be held taxable on BCL's

12

distributive share of Brinco's partnership earnings.[9]

IV.

For the foregoing reasons, the Tax Court erred in attributing taxable "Subpart F income" to the Brown Group based on BCL's distributive share of Brinco's earnings. The decision of the Tax Court assessing an income tax deficiency against the Brown Group for the tax year ending November 1, 1986 is vacated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

9. At oral argument, the IRS invoked the language of 26 U.S.C. § 702(b) of Subpart F of the Internal Revenue Code that states that the character of the partner's income is determined as if the partner directly realized that income from the source from which the partnership realized the income. However that same section also provides that the income "shall be determined as if such item were . . . incurred in the same manner as incurred by the partnership." 26 U.S.C. § 702(b). See n. 8, supra.

We do not find section 702(b) to shed much light on the present inquiry and, in any event, we conclude that it is unnecessary to reach or address Subpart K in resolving the instant controversy.