[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-10478

_____

Tax Court  No. 1684-99

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 06, 2002
THOMAS K. KAHN
CLERK

COGGIN AUTOMOTIVE CORPORATION,

Petitioner,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

_____

Appeal from a Decision of the United States Tax Court

_____

**(June 6, 2002)**

Before EDMONDSON, Chief Judge, HILL and LAY*, Circuit Judges.

_____

*Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

HILL, Circuit Judge:

The taxpayer appeals a decision of the tax court in favor of the government. We reverse.

## I.  PROCEDURAL BACKGROUND

In 1998, taxpayer Coggin Automotive Corporation (Coggin), a holding company, received two notices of deficiency from the Commissioner of the Internal Revenue Service (Commissioner) alleging additional tax due.[1]  The notices asserted that additional taxes were incurred during certain 1993 restructuring transactions when Coggin, a C corporation, elected S status, thereby triggering a concomitant recapture pursuant to Section § 1363(d)[2] of the LIFO inventory reserves held by partnerships in which Coggin was a partner.[3]

---

[1] The Commissioner asserted additional tax due in the amount of $432,619, for the short taxable year ending June 26, 1993, and also $432,619, for each of the calendar years ending 1993, 1994 and 1995.

[2] All statutory references are to the Internal Revenue Code of 1986 (26 U.S.C.) as amended and in effect during the years in issue in this appeal.

[3] Simply speaking, under Subchapter C of the Internal Revenue Code, the income of a C corporation is subject to corporate tax and any distributions it makes to its shareholders will be subject to a second, individual tax.   Sections 301 *et seq.*; 11(a).  Under Subchapter S, certain C corporations are permitted to elect to be S corporations.  Sections 1361 *et seq.*  While the S corporation determines taxable income at the corporate level, this corporate income is passed through to the S shareholders and taxed to them at their individual rates.  *Id.*

2

Two theories were espoused by the Commissioner. The first was that the Coggin 1993 restructuring transactions were tax-motivated sham transactions, lacking business purpose. On this basis, the entire $5,077,808 in LIFO reserves owned by the partnerships would be recaptured by Coggin over a four-year period. Section 1363(d)(2). The alternative theory was that if the 1993 restructuring transactions were in fact bona fide transactions, only a pro rata share, or $4,792,372,[4] of the partnership LIFO reserves would be recaptured and attributed to Coggin.[5]

In 1999, Coggin petitioned the tax court for a redetermination of the deficiencies. In 2000, the tax court held that the 1993 restructuring transactions were undertaken for valid business purposes.[6] It concluded, however, that under the Commissioner's alternate theory, using an aggregate approach to partnerships

_____

[4] The alternative position generated an additional tax due of $408,300, instead of $432,619, for each of the four taxable years in question. *See* note 1 *supra*.

[5] This alternate secondary theory was premised upon an aggregate approach to partnerships, treating them as mere aggregates of their partners, rather than an entity approach, treating the partnerships as separate entities in and of themselves. *See* Part IV.C. *infra*.

[6] Although its primary argument before the tax court was that the transactions were shams, motivated by tax-avoidance, the Commissioner does not appeal the finding by the tax court that the 1993 restructuring in the present case was undertaken for a legitimate business purpose.

*viz.* an entity approach to partnerships, Coggin must include $4,792,372 in income over a four year period, or its pro rata share of the partnerships' LIFO reserves recaptured pursuant to Section 1363(d)(2).

This appeal followed.

## II.  FACTUAL BACKGROUND

Many of the facts were stipulated and are extensively set forth in the tax court opinion.  *See Coggin Automotive Corp. v. Com'r*, 115 T.C. 349 (2000).  We recite only the pertinent ones here.

From 1970 to 1993, Coggin was a C corporation that operated in Jacksonville, Florida as a holding company.  Coggin owned varying majority interests in five C corporations (the subsidiaries).  The subsidiaries owned six automobile dealerships.[7]  Coggin, in its role as a holding company, did not own or operate any business.  It owned stock in the subsidiary C corporations.  The subsidiaries, in their role as the operating companies of the Coggin holding company, ran the automobile dealerships.

---

[7] Of the six automobile dealerships, five were owned directly by the subsidiaries and a sixth was owned through a limited partnership in which one of the subsidiaries owned a fifty-percent interest.  The other fifty-percent interest was owned by a corporation controlled by the general manager of the dealership.  Dealership general managers also owned small amounts of stock in the subsidiaries.

The subsidiaries directly owned their inventories of automobiles and light trucks. These inventories were elected by the subsidiaries to be maintained under the dollar-value LIFO method of accounting.[8] Coggin did not own any inventory. Consequently Coggin never made a LIFO inventory election.

In 1993, Luther Coggin, majority shareholder of Coggin, and certain of the general managers of the dealerships, wanted to restructure operations in order to achieve certain tax independent business purposes.[9] To this end, Mr. Coggin sought the advice of tax attorneys and accountants.

---

[8] Speaking simplistically, in order to determine its taxable income, a corporation must subtract its cost of goods sold from its revenues. The cost of goods sold may be determined under either a FIFO (first-in, first-out) method or a LIFO (last-in, first-out) method. Under the FIFO method, the earliest costs incurred are subtracted from current revenues. Under the LIFO method, the most recently acquired goods serve as the cost of goods sold subtracted from current revenue. Notably, in order to use the LIFO method of valuing inventories, the taxpayer must file an application with the Internal Revenue Service specifically electing that method. Section 472.

[9] At the time, Mr. Coggin was sixty-two years old. The restructuring had a three-fold purpose. It assisted Mr. Coggin in his succession planning, yet supported his efforts to retain qualified general managers of the automobile dealerships, key employees, by providing them with ownership incentives. The stand-alone partnership form also afforded the general managers greater flexibility than the corporate form. On appeal, the Commissioner concedes that the restructuring had a legitimate business purpose and was not a tax-motivated sham transaction. *See* note 6 *supra; cf. Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84 (1978);

5

The shareholders of Coggin created six new S corporations to act as general partners in six new limited partnerships.[10] Each S corporation contributed cash in exchange for a one-percent general partnership interest in the limited partnerships. In turn, each subsidiary contributed the assets and liabilities of the automobile dealership, including its inventory, in exchange for a limited partnership interest.[11]

Thereafter the subsidiaries were liquidated into Coggin. Coggin became a limited partner in the limited partnerships. And finally, in the triggering event for purposes of this appeal, Coggin elected Subchapter S status in August 1993, effective for its short taxable year beginning in June 1993, and ending in December 1993.[12]

---

[10] Mr. Coggin owned 78% of Coggin. The remaining 22% was equally held by brothers, Harold and Howard Osteen.

[11] The sixth dealership contributed its fifty-percent interest in its existing limited partnership to one of the new limited partnerships. *See* note 7 *supra.* The general managers that had been minority shareholders in three of the subsidiaries were admitted as minority limited partners in three of the limited partnerships.

[12] The legal opinion rendered by the law firm engaged by Mr. Coggin did not address the issue of LIFO recapture. The talking points paper prepared by accounting firm KPMG made the following statement:

> LIFO inventory should not be recaptured on conversion of [Coggin] from a C corporation to an S corporation *since [Coggin] does not inventory any goods under the LIFO method* for its last tax year as a C corporation (I.R.C. section 1363(d))(some degree of IRS risk which is being reviewed by our Washington National Tax practice).

## III. STANDARD OF REVIEW

The interpretation by the tax court of a statutory section of the Internal Revenue Code is a question of law that we review *de novo*. *See McLaulin v. Com'r*, 276 F.3d 1269, 1271-72 (11th Cir. 2001).

## IV. DISCUSSION

*A. Statute*

Section 1363 of the Internal Revenue Code, entitled "Effect of Election on Corporation," provides:

> (a) General Rule.— Except as otherwise provided in this subchapter, an S corporation shall not be subject to the taxes imposed by this chapter.
>
> . . .
>
> (d) Recapture of LIFO Benefits.—
>
> > (1) In general.— If—
> > > (A) an S corporation was a C corporation for the last taxable year before the first taxable year for which the election under section 1362(a) [to become an S corporation] was effective, and
> > > (B) the corporation inventoried goods under the LIFO method for such last taxable year,
> >
> > the LIFO recapture amount shall be included in the gross income of the corporation for such last taxable year (and appropriate adjustments to the basis of inventory shall be made to take into account the amount included in gross income under this paragraph).

(Emphasis added).

7

The 'LIFO recapture amount' is defined in Section 1363(d)(3) as "the amount (if any) by which— (A) the inventory amount of the inventory asset under the first-in, first-out method authorized by section 471, exceeds (B) the inventory amount of such assets under the LIFO method." An 'inventory asset' is defined in Section 1363(d)(4)(B) as "the stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year."

B. *Legislative History*

Section 1363(d) was added to the Internal Revenue Code by Congress in 1986 to supplement and strengthen the built-in gains tax provisions of Section 1374.[13] As the Conference Committee explained:

---

[13] Under Section 1374(a), a built-in gains tax is imposed upon an S corporation's net recognized built-in gain attributable to appreciated assets held at the time that S corporation status is elected. An S corporation must pay a separate corporate level tax on any net recognized built-in gains recognized through a sale or distribution of assets within 10 years following the effective date of the corporation's election of S corporation status. *See* Section 1374(a); H.R. Conf. Rep. No. 99-841, vol. II, at 198-199, 203 (1986). A C corporation using FIFO would be covered by Section 1374. A C corporation using LIFO would not. Recognizing that LIFO method C corporations electing S status could easily avoid Section 1374 tax on the built-in gain attributable to LIFO inventory (as long as they did not have a decrement in pre-election LIFO layers during Section 1374's 10-year recognition period), Congress added Section 1363(d). *See* H.R. Conf. Rep. No. 100-391, vol. II, at 1098 (1987).

Thus, a C corporation using the last-in, first-out (LIFO) method of accounting for its inventory which converts to S corporation status is not taxed [under Section 1374] on the built-in gain attributable to LIFO inventory to the extent it does not invade LIFO layers during the ten-year period following the conversion.

H.R. Conf. Rep. No. 100-495 at 974 (1987), *reprinted in* 1987-3 C.B. 193, 254.

## C. Tax Court Opinion

There are two approaches to partnership treatment. The so-called "entity" approach treats partnerships as separate entities in and of themselves, with separate interests being treated as owned by each of the partners. An "aggregate" approach treats partnerships as mere aggregates of their partners, each of whom directly owns an interest in the partnership's assets and operations. As cited below, from time to time, the Commissioner and the tax court utilize one and then the other in analyzing the tax consequences of partnership activity.

Here, relying upon the legislative histories of Sections 1374 and 1363(d), the tax court reasoned that the application of an aggregate approach better served Congress' intent to prevent corporations from avoiding a second level of taxation on built-in gain assets by converting to S corporations. Its rationale was that the line of cases applying the aggregate approach would prevent Coggin from using the LIFO method of accounting to permanently avoid gain recognition on

9

appreciated assets.[14]  *See Holiday Village Shopping Ctr. v. United States*, 773 F.2d

276, 279 (Fed. Cir. 1985); *Casel v. Com'r,* 79 T.C. 424, 433 (1982); *Unger v.*

*Com'r,* 936 F.2d 1316 (D.C. Cir. 1991).

The tax court recognized that Subchapter K of the Internal Revenue Code

(Partners and Partnerships) blends both approaches.[15]  Outside of Subchapter K,

the tax court concluded it to be a tossup, whether the aggregate or the entity

approach was to be applied appears to have depended upon which approach more

appropriately served the Code provision at issue.

Without further analysis, the tax court concluded that "both the legislative

history and the statutory scheme of section 1363(d) *mandate* the application of the

---

[14] On the other hand, the tax court found that the entity approach would potentially allow Coggin to permanently avoid paying a second level of tax on appreciated property by encouraging transfers of inventory between related entities.  While acknowledging the line of cases applying the entity approach, the tax court found them factually restricted to the specific code provisions at issue and their respective legislative histories.  *See Brown Group, Inc. & Subs. v. Com'r,* 77 F.3d 217 (8th Cir. 1996), *rev'g* 104 T.C. 105 (1995)(regarding Subpart F income); *Madison Gas & Elec. Co. v. Com'r,* 72 T.C. 521, 564 (1979), *aff'd* 633 F.2d 512 (7th Cir. 1980) (regarding ordinary and necessary expenses under Section 162); *P.D.B. Sports, Ltd. v. Com'r,* 109 T.C. 423 (1997)(regarding Section 1056).

[15] In certain areas of Subchapter K, the aggregate approach predominates. *See* Sections 701 (partners, not partnership, subject to tax); 702 (income and credits of a partner).  On the other hand in other areas of Subchapter K, the entity approach predominates.  *See* Sections 742 (basis of transferee partner's interest); 743 (optional adjustment to basis of partnership property).

aggregate approach," and deemed Coggin to own a pro rata share ($4,792,372) of the dealerships' inventories (emphasis added).  We disagree.

The tax court, while paying lip service to the "statutory scheme of 1363(d)," relies entirely upon the legislative history of Section 1363(d) and the line of cases using the aggregate approach, to provide an interpretation favorable to the Commissioner in quantum leap fashion.  It is unclear from the opinion exactly how the tax court concluded that Congress intended this result.

Most notably, no where in the opinion does the tax court address the plain meaning of the statute itself.  Therefore, that is where we must start.

D.  Analysis

1.  The Statutory Scheme of Section 1363(d)

Under its plain language, Section 1363(d) will apply and recapture of LIFO benefits will be triggered if two conditions are met: (1) a C corporation elects S corporation status under Section 1363(a); and (2) the C corporation "inventoried goods under the LIFO method" in the "last taxable year before the first taxable year for which the election under Section 1362(a) was effective."

Here it is clear that the first prong is met.  However, it is apparent that, by definition, the second prong is not met.  Coggin never owned any inventories.  Accordingly it never made an election to use the LIFO method.  In fact, the

11

Commissioner concedes in its brief that the plain language of Section 1363(d) "does not *literally* apply to the facts of this case."[16]

Continuing on with the plain language of the statute, a C corporation converting to S corporation status need only recapture its "LIFO recapture amount." Section 1363(d)(1). LIFO recapture amount is defined as the difference between the value of an inventory asset as it would have been valued using the FIFO method and its value using the taxpayer's LIFO method. Section 1363(d)(3). An inventory asset is defined as the "stock in trade *of the corporation*, or other property of a kind which would properly be included in the inventory *of the corporation* if on hand at the close of the taxable year." Section 1363(d)(4)(B).

Here it is undisputed that Coggin held no stock in trade. Neither did it hold property of a kind which would properly be included in its inventory at the close of its taxable year. Therefore under the plain meaning of the statute, there is no LIFO recapture amount that can be attributed to Coggin.

### 2. *The Plain Meaning Rule*

---

[16] Indeed the Commissioner acknowledges that the tax court finding that the aggregate approach applies only "in the circumstances of this case" and concedes that treating a partnership as an aggregate in all instances will not achieve the purpose of Section 1363(d).

The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language. *Caminetti v. United States,* 37 S.Ct. 192 (1917). "[W]hen the terms of a statute are clear, its language is conclusive and courts are not free to replace that clear language with an unenacted legislative intent." *United States v. Morrison*, 844 F.2d 1057, 1064 (4th Cir. 1988). "[W]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000)(en banc).

Perhaps the tax court is straining to extend its interpretation of the legislative histories of Section 1373 and Section 1363(d) in order to close what it perceives to be a loophole in the case of holding companies that own no inventory yet elect S corporation status. In *Gitlitz v. Com'r*, 121 S.Ct. 701 (2001), in a case dealing with a potential double windfall to S corporation shareholders due to a discharge of indebtedness, the Supreme Court held that "[b]ecause the Code's plain text permits the taxpayers here to receive these benefits, we need not address this policy concern." *Id.* at 710. "[T]he result is required by statute." *Id.* at n.10. If "this is an inequity in the United States Tax Code . . . only Congress or the Secretary (as the holder of delegated authority from Congress) has the authority to

ameliorate" it.  *Hillman v. Internal Revenue Service*, 250 F.3d 228, 234 (4ᵗʰ Cir.

2001); *see also Brown Group, Inc. v. Com'r*, 77 F.3d 217, 222 (8ᵗʰ Cir.

1996)(where the Eighth Circuit reversed the tax court's use of the aggregate

method of partnership taxation to close what it perceived to be a loophole in the

Internal Revenue Code in that "such a tax loophole is not ours to close but must

rather be closed or cured by Congress.").

In *Petroleum Corp. of Texas, Inc. v. United States*, 939 F.2d 1165 (5ᵗʰ Cir.

1991), the issue presented was whether a corporate partner in a partnership was

subject to depreciation and depletion recapture under Sections 1245, 1250 and

1254 upon its liquidating distributions to shareholders of its interests in three

partnerships.  While acknowledging that the transactions had a valid business

purpose, the Commissioner argued that the aggregate theory of partnerships should

be applied to protect the recapture provisions.  *Petroleum Corp.*, 939 F.2d at 1166.

The Fifth Circuit rejected the Commissioner's position, instead finding that

the language of the statute was unambiguous and that, under the statute,

partnership interests were not among the specific properties listed as being subject

to recapture upon distribution.  *Id.* at 1168.  The *Petroleum Corporation* court

concluded that the aggregate theory could not be used to circumvent the clear

language of the Internal Revenue Code:

14

> [T]here [is no] Code authority extant that would have authorized ignoring or "looking through" the partnership to conclude, fictitiously, that the corporations were distributing assets then held in partnership solution as distinguished from distributing interests in the partnerships themselves. Federal income tax law is replete with examples of applying the entity theory of partnerships on some occasions while applying the conduit or aggregate theory on others. It suffices that there is no authority for the government's expedient position that use of the conduit theory is authorized and that such use should somehow override the clear language of the Code.

*Petroleum Corp.*, 939 F.2d at 1168-69.[17]

Although the Federal Circuit reached a contrary conclusion on the recapture issue in *Holiday Village*, 773 F.2d at 279, the Fifth Circuit in *Petroleum Corporation* distinguished *Holiday Village* on the basis that there was no legitimate business purpose present in *Holiday Village*, therefore the application of substance-over-form principles was appropriate. *Petroleum Corp.*, 939 F.2d at 1167 n.1. We agree.

---

[17] Practically speaking, the tax court holding results in basis adjustment nightmares not contemplated by the Internal Revenue Code or its regulations. Coggin did not actually own inventory when it converted to S status. Therefore it had no inventory basis to increase.

The Commissioner concedes that if the tax court result is affirmed, there is no guidance in the Internal Revenue Code as to how to implement the basis adjustment requirements of Section 1363(d). *See e.g. P.D.B. Sports, Ltd. v. Com'r*, 109 T.C. 423 (1997)(where in Section 1056 it was not appropriate to apply the aggregate approach due to enormous basis complexities that would result, such that had not as yet been addressed or explained by Congress). Neither we nor the taxpayer receive much comfort from the Commissioner's response to this impracticable consequence that "we can work this [basis problem] out."

It is undisputed that the 1993 Coggin restructuring transaction had economic substance and a valid business purpose. The aggregate theory does not override the clear language of the statute. In accordance with *Petroleum Corporation,* we must follow the statute and not extend it, by using judicially-created, look-through principles. *Id.*

### 3. In Summary

Reading the clear and unambiguous wording of the statute, applying recognized rules of statutory interpretation, Coggin is entitled to know what the tax consequences of its restructuring will be with reasonable certainty at the outset. Indeed its own accountants advised Coggin prior to the transaction that LIFO inventory should not be recaptured since it did not inventory any goods under the LIFO method. *See* note 12 *supra*.

It is worrisome to think that a taxpayer may not know in advance whether this would be the day that the fictional aggregate theory or the fictional entity theory of partnerships will be applied on an *ad hoc* basis.[18] Relying upon the plain meaning of the statute, in a legitimate business transaction, a taxpayer deserves the

---

[18] Although not present in the regulations when Coggin undertook its restructuring, and, prospective in nature, the so-called anti-abuse regulation, Reg. § 1.701-2(e), now specifically states that the Internal Revenue Service "can treat a partnership as an aggregate of its partners in whole or in part as appropriate to carry out the purpose of any provision of the Internal Revenue Code or the regulations promulgated thereunder."

right to be able to predict in advance what the tax consequences of such transaction will be with reasonable certainty. Here the statute just does not do what the litigation position of the Commissioner would have it to do.

Coggin was a holding company. It held stock in other C corporations. It was not engaged in the sale of automobiles. Under plain language of the statute, it had no LIFO inventory requiring recapture upon its election to become an S corporation. It is not necessary to resort to legislative history. Any potential windfall to holding companies must be cured by Congress, not the judiciary. *See Gitlitz*, 121 S.Ct. at 710.

## V. CONCLUSION

We reverse the decision of the tax court.

REVERSED.