55 So.3d 273 (2010)
James E. PRINCE, Jr.
v.
STATE DEPARTMENT OF REVENUE.
2080634.
Court of Civil Appeals of Alabama.
May 7, 2010.
*274 Jeff Patterson, Montgomery; and Richard C. Litwin of The Litwin Law Firm, P.C., Atlanta, Georgia, for appellant.
Ron Bowden, chief counsel, and Gwendolyn B. Garner, asst. counsel, Alabama Department of Revenue, for appellee.

On Application for Rehearing
THOMPSON, Presiding Judge.
The opinion of January 22, 2010, is withdrawn, and the following is substituted therefor.
James E. Prince, Jr., appeals from the summary judgment of the Montgomery Circuit Court affirming the State Department of Revenue's final income-tax assessment against him. For the reasons stated herein, we affirm.
In 1996, two Alabama residents formed a corporation called Zebra.Net, Inc. ("Zebra.net"), an Alabama corporation. The Alabama residents elected to have Zebra.net treated as an "S corporation" for federal income-tax purposes. This court recently described such a corporation as follows:

*275 "[A]n S corporation is a corporation that makes a valid election to be taxed under Subchapter S of Chapter 1 of the Internal Revenue Code. . . . [A]n S corporation generally pays no corporate income taxes on its profits. Instead, the shareholders in the S corporation pay income taxes on their proportionate shares of the profits of the S corporation. See Coggin Auto. Corp. v. Commissioner, 292 F.3d 1326 (11th Cir.2002), in which the United States Court of Appeals for the Eleventh Circuit discussed the difference between a C corporation and an S corporation:
"`Simply speaking, under Subchapter C of the Internal Revenue Code, the income of a C corporation is subject to corporate tax and any distributions it makes to its shareholders will be subject to a second, individual tax. Under Subchapter S, certain C corporations are permitted to elect to be S corporations. While the S corporation determines taxable income at the corporate level, this corporate income is passed through to the S shareholders and taxed to them at their individual rates.'
"292 F.3d at 1327 n. 3 (internal citations omitted)."
Giardina v. Giardina, 987 So.2d 606, 612 (Ala.Civ.App.2008). Alabama law recognizes S corporations and, like federal law, treats them for taxing purposes as pass-through entities. See § 40-18-160 et seq., Ala.Code 1975.
After the two Alabama residents formed Zebra.net, they approached Prince, a Mississippi resident, about investing in it. Prince agreed to do so, and, after making an investment, he became a shareholder in Zebra.net, owning one-third of the shares of Zebra.net. The two Alabama residents managed Zebra.net's day-to-day operations; Prince did not engage in the operation or management of the company.
In 1999, the three shareholders of Zebra.net entered into a "Merger Agreement and Plan of Reorganization" ("the merger agreement") for the purpose of merging Zebra.net with another company ("the merger transaction"). As part of the merger agreement, the stock in Zebra.net was converted into a right to receive payment from the company acquiring Zebra.net. The form of the payment, which was to total approximately $6.6 million, less certain of Zebra.net's liabilities, was based on whether Zebra.net's shareholders would agree to have the acquisition of Zebra.net treated, under 26 U.S.C. § 338(h)(10), as an acquisition of all Zebra.net's assets.[1] If they did not do so, the *276 shareholders would receive 80% of their payment as stock in the parent corporation of the company acquiring Zebra.net and the remaining 20% as cash. If they agreed to make such an election, however, they would receive the entire payment as cash. With regard to the election under 26 U.S.C. § 338(h)(10), the merger agreement provided:
"In the event that an election is made pursuant to Section 1.2(d) hereof, as soon as practicable after the Closing, Parent and Stockholders shall make a joint election under Section 338(h)(10) of the Code and Treasury Regulation Section 1.338(h)(10)-1 (and any comparable election under state or local law) with respect to the purchase (an `Election'). At the Closing, the parties will execute and deliver a Form 8023 in form and substance agreed to by the parties. Parent and Stockholders will cooperate with each other to take all actions necessary and appropriate (including filing such additional forms, returns, elections, schedules and other documents as may be required) to effect and preserve a timely Election in accordance with the provision of Treasury Regulation Section 1.338(h)(10)-1 (or any comparable provisions of state or local law) or any successor provisions. Parent and Stockholders shall report the transactions contemplated by this Agreement in a manner consistent with the Election and shall take no position inconsistent therewith in any tax return or any proceeding before any taxing authority or otherwise."
The merger agreement was dated September 15, 1999, and was signed by all three of Zebra.net's shareholders, including Prince, as well as by representatives of the company acquiring Zebra.net and that company's parent corporation. The merger transaction was consummated at a law firm located in Georgia.
Although, as noted above, an S corporation does not pay income tax but, instead, passes that liability through to its shareholders, an S corporation must still file an informational tax return with the Alabama Department of Revenue ("the Department"), as well as with the Internal Revenue Service. Zebra.net filed such a return with the Department on June 29, 2000, for the 1999 tax year, the year of the merger transaction. Zebra.net's return indicated that it had income of $5,133,333. Attached to Zebra.net's return was a "Shareholder's Statement of Income & Deductions" (known as a "Schedule K-l") for Prince. That form indicated that Prince's distributive share of Zebra.net's income was $1,711,109 in 1999, or approximately one-third of Zebra.net's total income.
Prince paid income tax on his distribution from Zebra.net in Mississippi, his state of residence. He did not pay income tax to the State of Alabama. The Department, having received a Schedule K-1 for Prince indicating that Zebra.net had distributed $1,711,109 to him from the sale of its assets and from other income, assessed income tax, with penalties and interest, against Prince in the amount of $141,245.87. Prince appealed that assessment to the Department's administrative law division, which upheld the fact of the assessment but lowered the amount of the assessment, with penalties and interest, to $108,822.92 to take into account certain net operating losses sustained by Zebra.net in the years preceding 1999. Prince paid the assessment under protest and filed a timely *277 appeal to the Montgomery Circuit Court ("the trial court").
As part of his appeal to the trial court, Prince filed a three-count complaint against the Department, which he subsequently amended. First, he asserted that the income he received from the merger transaction could not be taxed under Alabama law because the merger involved only the sale of his shares of stock in Zebra.net, which he owned in Mississippi, and the sale of which occurred in Georgia. According to Prince, the only basis for the imposition of income tax under Alabama law on a nonresident individual is for income derived from "property owned or business transacted in Alabama." In his second count, Prince asserted that Alabama's taxation of his income from the merger transaction violated his right to due process under the United States Constitution. In his third count, Prince asserted that Alabama's taxation of the income he derived from the merger transaction violated the Commerce Clause of the United States Constitution.
Subsequent to the Department's filing an answer denying the assertions in Prince's complaint, the parties filed crossmotions for a summary judgment. In his motion, Prince contended that, under Alabama law, nonresidents could be taxed only on income from property owned or business transacted in Alabama. He argued that, because he owned his stock in Zebra.net in Mississippi and did not transact any business in Alabama, he was not subject to Alabama income tax. He next argued that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that an individual have minimum contacts with a state before that state can exercise jurisdiction to levy a tax on that individual. He argued that he had no such minimum contacts with the State of Alabama. Finally, he contended that the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, prohibits a state from imposing a tax on an activity that has little or no nexus with that state. In this case, Prince argued, there was no substantial nexus between the sale of his stock in Zebra.net and Alabama because he owned his Zebra.net stock in Mississippi and sold it in Georgia.
In its summary-judgment motion, the Department argued that Zebra.net's shareholders, including Prince, exercised the option to treat, under 26 U.S.C. § 338, the merger transaction as the sale of all Zebra.net's assets rather than the sale of their stock in Zebra.net. Thus, argued the Department, the fact that Prince owned his Zebra.net shares in Mississippi was of no consequence; the income he received was not based on a sale of his stock but, rather, on the distributive share of income that he received from the sale of Zebra.net's assets, assets that were located in Alabama. As a result, the Department asserted, the minimum contacts and nexus requirements of the federal constitution had been satisfied, and Alabama was not barred from imposing income tax on Prince's distributive share of Zebra.net's income. Prince responded to the Department's motion by arguing, among other things, that the parties had not validly elected to treat the merger transaction as a sale of Zebra.net's assets, rather than as a sale of the shareholders' stock in Zebra.net, and that, as a result, the Department's legal argument was without merit.
The trial court conducted a hearing subsequent to which it entered a judgment in favor of the Department, upholding the assessment against Prince. In its judgment, the trial court found that Zebra.net's shareholders had made a valid election under 26 U.S.C. § 338 to treat the merger *278 agreement as a sale of all Zebra.net's assets. The trial court concluded that "[i]t would be illogical to allow [Prince] to treat the sale as an asset sale for federal tax purposes, yet claim it was a stock sale on a state return in order to obtain tax benefits where they suit him in either system." Thus, the trial court entered a summary judgment in favor of the Department. Prince filed a timely appeal to this court.
Prince contends that the only thing he owned with regard to Zebra.net was stock in the company and that, as a result, the only thing he could have sold in the merger transaction was that stock. Because he owned that stock in Mississippi, he argues, the income he derived from its sale was not taxable by Alabama. Prince argues that the parties did not make a valid election under 26 U.S.C. § 338 to treat the merger transaction, for tax purposes, as a sale to the acquiring company of all Zebra.net's assets. To make such an election, he argues, the parties to the transaction were required to have filed a federal Form 8023 with the Internal Revenue Service, and, he contends, there is no evidence of any such filing. Prince asserts that the Department stipulated in the trial court that it had on file a complete copy of Zebra.net's federal income-tax return for 1999, and he points out that there is no Form 8023 attached to that return.
The Department contends, in effect, that the parties to the merger transaction made a valid election under § 338 and that, as a result, the merger transaction involved, for tax purposes, the sale of Zebra.net's assets, which generated income that passed through the corporation to Prince, rather than the sale of Zebra.net's shareholders' stock. In support of its contention, the Department points out that Zebra.net's three shareholders received the amount of cash called for under the "cash option" of the merger agreement, which option provided that an election under 26 U.S.C. § 338 was required to have been made. The Department also notes that, under the merger agreement, if the cash option was selected such that a 26 U.S.C. § 338 election was required to be made, the companies involved in the merger "shall report the transactions contemplated by this Agreement in a manner consistent with the election and shall take no position inconsistent therewith in any tax return or any proceeding before any taxing authority or otherwise." The Department argues that Prince, by this language in the merger agreement, is estopped from arguing that a 26 U.S.C. § 338 election was not made. The Department also points out that all the necessary parties, including Prince, executed a Form 8023 making the 26 U.S.C. § 338 election.[2] The Department points out that Zebra.net, itself, reported the sale of its assets in its 1999 informational tax return as part of the merger transaction and that it indicated, in the K-1 forms attached to its return, that it had passed through that income to Prince and the other two shareholders.
In response to Prince's argument that the Department stipulated, in effect, that a Form 8023 had not been filed with Zebra.net's informational tax return, the Department argues that it was stipulating only to the fact that the documents presented were all that it had on file as to the referenced tax returns; it states that it "did not and cannot stipulate as to what *279 was actually filed with the Internal Revenue Service." Moreover, the Department argues, the instructions to Form 8023 indicate that the failure to file a copy of Form 8023 with the target company's tax return does not invalidate the § 338 election.
26 U.S.C. § 338(g)(2) provides that an election under that section "shall be made in such manner as the Secretary [of the United States Treasury Department] shall by regulations prescribe." Treasury Regulation 26 C.F.R. § 1.338(h)(10)-l(c)(3) provides that an election under § 338 is made "on Form 8023 in accordance with the instructions to the form." At the time of the merger transaction, the instructions to Form 8023 provided, in relevant part:
"Persons making elections under section 338 must file Form 8023.

"Generally, a purchasing corporation must file Form 8023 for the target. If a section 338(h)(10) election is made for a target, Form 8023 must be filed jointly by the purchasing corporation and the common parent of the selling consolidated group (or the selling affiliate or S corporation shareholder(s)).
". . . .
"File Form 8023 by the 15th day of the 9th month beginning after the acquisition date to make a section 338 election for the target corporation. File Form 8023 with the District Director (Attention: Chief of Examination) for the Internal Revenue district where the main corporate office (headquarters) of the purchasing corporation is located (or, if the purchasing corporation is a member of a consolidated group, with the District Director (as identified above) of the common parent of the consolidated group). If an affiliated group that does not file consolidated returns makes its QSP [(qualified stock purchase)] of the target through more than one member, a section 338 election for the target is made by filing Form 8023 with the District Director (as identified above) of the affiliate that acquired the largest percentage (by value) of the target stock in the QSP (or, if there is more than one such affiliate, file Form 8023 with the District Director of any one such affiliate).
"A copy of Form 8023 must be attached to the final income tax return of the old target, to the first income tax return of the new target, and to the income tax return of the purchasing corporation for its tax year that includes the acquisition date; but failure to do so will not invalidate a section 338 election. If a section 338(h)(10) election is made, a copy of Form 8023 is considered to be attached to the final income tax return of the old target if a copy of Form 8023 is attached to the income tax return of the selling consolidated group (or the selling affiliate) for the tax year of the seller that includes the acquisition date (or, in the case of a target that is an S corporation, attach Form 8023 to the final income tax return of the S corporation with the additional copies distributed to each electing S corporation shareholder with his or her Schedule K-1 (Form 1120S))."
(Emphasis added.)
There is no direct evidence indicating whether the parties to the merger transaction filed a Form 8023 with the appropriate district director of the Internal Revenue Service in order to effect an election under 26 U.S.C. § 338. However, circumstantial evidence disclosed by the record indicates that such an election was, in fact, made. Prince and the other Zebra.net shareholders received compensation under the merger agreement in an amount indicating that a 26 U.S.C. § 338 election was intended by the parties to the merger transaction; Prince admits that he and all *280 the other relevant parties executed a Form 8023 for the purpose of making an election under 26 U.S.C. § 338; Zebra.net reported the receipt of income from the sale of its assets as though a valid 26 U.S.C. § 338 election had been made; and Zebra.net reported distributing that income to its shareholders, including Prince, which, again, was in keeping with a sale by Zebra.net of its assets rather than a sale by its shareholders of their Zebra.net stock. The fact that a copy of the Form 8023 was not attached to Zebra.net's informational tax return is not evidence indicating that form was not filed with the appropriate Internal Revenue Service district director because, as quoted above, the instructions to Form 8023 indicate that the failure to attach a copy of the form to the appropriate tax returns does not invalidate an election under 26 U.S.C. § 338.
The circumstantial evidence in the record, which is essentially undisputed by the parties, indicates that the parties to the merger transaction made an election under 26 U.S.C. § 338 to treat the transaction as a sale of all Zebra.net's assets. In light of this evidence, and because there is no evidence, direct or circumstantial, tending to indicate that the parties did not make a 26 U.S.C. § 338 election, we conclude that evidence supports the trial court's determination that such an election was made.
Prince contends that, even if a valid election under 26 U.S.C. § 338 was made, Alabama law does not provide that his gain from the merger transaction is subject to the imposition of an income tax by the State of Alabama. Prince argues that, although Alabama law acknowledges elections under 26 U.S.C. § 338, it does so only to the extent of determining the amount of gain received by the corporation being acquired, not to the extent of determining the source of that income. He argues that, because the income he received was from the sale of stock that he owned in Mississippi and not from the sale of Zebra.net's assets, that income is taxable in his state of residence, Mississippi, and not in Alabama. We disagree.
Alabama has adopted, for state income-tax purposes, the federal income-tax treatment of a company that elects, under 26 U.S.C. § 338, to treat a stock sale as an asset sale. Alabama law specifically provides that "[i]f a valid election under 26 U.S.C. § 338 is made, the amount of gain recognized by the target corporation shall be determined in accordance with 26 U.S.C. § 338." § 40-18-8(j), Ala.Code 1975. The regulation promulgated based on § 40-18-8(j) provides that "[i]f an acquiring corporation makes a valid election under 26 U.S.C. § 338, the amount of gain recognized by the target corporation shall be determined in accordance with 26 U.S.C. § 338. For interpretation of federal statutes adopted by the Alabama Legislature see Rule 810-3-1.1-.01." Rule 810-3-8-.13, Ala. Admin. Code (Department of Revenue). In Revenue Ruling No. 94-005 (Alabama Dep't of Revenue, June 14, 1994), the Department addressed the question whether the state follows the federal treatment afforded to a target corporation, such as Zebra.net, as a result of an election under 26 U.S.C. § 338(h)(10). The Department wrote:
"Alabama tax will be paid by [the target corporation] on its gain from the deemed asset sale as provided in § 40-18-8([j]). Like its federal counterpart, § 40-18-8([j]) is designed to afford to a stock sale the same income tax treatment as would be produced by an asset sale followed by a complete liquidation of the [target corporation], but without forcing the parties to go through the intricacies of transferring assets piecemeal."
*281 Prince argues that, although § 40-18-8(j) sets forth the measure of gain to be recognized by a target corporation upon an election under 26 U.S.C. § 338, it does not provide for the characterization of that gain as either a stock sale or an asset sale. Prince's argument ignores, however, the fact that an election under 26 U.S.C. § 338 deals with treating a stock sale, in which a corporation would not recognize any gain, as an asset sale, in which the corporation would recognize gain. By indicating the amount of the gain recognized by the target corporation, § 40-18-8(j) presupposes that the target corporation would, in fact, be receiving a gain as a result of the sale. Furthermore, because the corporation does not own the shareholders' shares of stock, its gain in the transaction can be recognized only from the sale of that which it does own, i.e., its assets.
Under Alabama law, an S corporation is not subject to Alabama corporate income tax. § 40-18-160(a), Ala.Code 1975. Instead, the individual shareholders of the S corporation are liable for paying taxes on the S corporation's income. § 40-18-162(a). Section 40-18-162(a) provides:
"(a) In determining the tax of a shareholder for the shareholder's taxable year in which the taxable year of the Alabama S corporation ends, or for the final taxable year of a shareholder who dies or of a trust or estate that terminates before the end of the corporation's taxable year, there shall be taken into account the shareholder's pro rata share of the corporation's:
"(1) Items of income, including tax-exempt income, loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, including charitable contributions, and
"(2) Nonseparately computed income or loss. The term `nonseparately computed income or loss' means gross income minus the deductions allowed to the corporation under this article, determined by excluding all items described in subdivision (1) of this subsection."
The character of the items attributed to the shareholders of an S corporation for income-tax purposes is set forth in § 40-18-162(b), which provides:
"(b) The character of any item included in a shareholder's pro rata share under subsection (a) of this section shall be determined as if the item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation."
Because Alabama recognizes an election under § 338 and treats the sale occurring under such an election as a sale of assets, and because the characterization of an S corporation's income occurs at the corporate level rather than at the shareholder level, the sale at issue was of Zebra.net's assets, the income from which is attributable, for Alabama income-tax purposes, to the individual shareholders of Zebra.net; it was not, for Alabama income-tax purposes, a sale of the shareholders' stock in Zebra.net.[3]
*282 Prince next contends that the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the Department's imposition of tax on the income Prince derived from the merger transaction. The United States Supreme Court has indicated that, with regard to the imposition of a tax, a "fundamental requirement" of the Due Process Clause is "that there be `some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" Allied-Signal, Inc. v. Director, Div. of Taxation, 504 U.S. 768, 777, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (quoting Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-45, 74 S.Ct. 535, 98 L.Ed. 744 (1954)). Thus, the question before this court with regard to due process is whether there is a minimum connection between Alabama and Prince, a nonresident shareholder of the resident S corporation that generated the income on which Alabama seeks to levy a tax.
Although the appellate courts of this state have never addressed the precise issue, courts from other jurisdictions that have addressed the issue have concluded that the imposition of a tax on the income received by a nonresident shareholder from a resident S corporation does not violate the Due Process Clause. For example, in Agley v. Tracy, 87 Ohio St.3d 265, 267, 719 N.E.2d 951, 953 (1999), the Ohio Supreme Court wrote:
"Appellants also argue that taxation of nonresident shareholders of an S corporation violates their due process rights. . . . The Due Process Clause `requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' Miller Bros. Co. v. Maryland (1954), 347 U.S. 340, 344-345. . . . In other words, a state must have minimum contacts with the entity in order to tax it. . . .
". . . .
"Appellants have admitted that their S corporations conducted business in Ohio. Thus, it is evident that the S corporations have utilized the protections and benefits of Ohio by carrying on business here. This income was then passed through to the appellants as personal income. Thus, the appellants, through their S corporations, have also availed themselves of Ohio's benefits, protections, and opportunities by earning income in Ohio through their respective S corporations. We find that this provides Ohio the `minimum contacts' with the appellants to justify taxing appellants on their distributive share of income."
87 Ohio St.3d at 267, 719 N.E.2d at 953. In Mandell v. Auditing Division of the Utah State Tax Commission, 186 P.3d 335, 345 (Utah 2008), the Utah Supreme Court wrote:

*283 "To withstand a due process challenge to the imposition of a tax, a `definite link' or `minimum connection' must exist between the state and the person, property, or transaction sought to be taxed. . . . A deemed asset sale of a Utah S corporation that does all of its business within Utah provides a sufficient link or connection for Utah to constitutionally assert taxing jurisdiction over a nonresident shareholder of that corporation. As previously discussed, courts have consistently affirmed the right of states to tax nonresident shareholders of S corporations for business transactions conducted within the taxing state."
See also Valentino v. Franchise Tax Bd., 87 Cal.App.4th 1284, 1293 n. 11, 105 Cal. Rptr.2d 304, 311 n. 11 (2001) ("However, the law is settled that there is no constitutional bar to imposing the [income] tax [on nonresident shareholders of an S corporation]."); General Accessory Mfg. Co. v. Oklahoma Tax Comm'n, 122 P.3d 476, 480 (Okla.Civ.App.2005) ("The power to tax a non-resident's income derived from sources within the state, or accruing from activity having a situs within the state, cannot be questioned."); and Kulick v. Department of Revenue, 290 Or. 507, 518, 624 P.2d 93, 99 (1981) ("[I]n demanding that [nonresident] shareholders of a closely held corporation instead of the corporation contribute to this state a tax on financial gains derived from sources within the state, the state is not demanding the shareholders' property without the due process of law commanded by the 14th amendment.").[4]
It is undisputed that, at the time of the merger transaction, Zebra.net was an Alabama S corporation that operated solely in Alabama. Moreover, as we have previously discussed, the merger transaction generated income to Zebra.net, a portion of which was passed through to Prince. We conclude that Prince's receipt of income generated by Zebra.net, through the sale of its assets, constitutes a sufficient connection with the State of Alabama to allow the Department, consistent with principles of federal due process, to levy a tax specifically on that income.
Our conclusion that the tax at issue in this case does not violate the Due Process Clause is not altered by our consideration of the plurality opinion in Lanzi v. Alabama Department of Revenue, 968 So.2d 18 (Ala.Civ.App.2006), on which Prince relies. Lanzi was issued per curiam, with two judges concurring in the main opinion, one judge concurring in the result, and two judges dissenting. In Lanzi, a plurality of the court ruled that Alabama's attempted levy of an income tax on a nonresident *284 limited partner's distributive share of partnership income from an Alabama limited partnership violated the Due Process Clause because the nonresident limited partner had no contacts with Alabama other than his ownership of a limited interest in the limited partnership. The plurality opinion relied on Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in which the United States Supreme Court held that a nonresident shareholder's ownership of stock in a corporation, standing alone, does not constitute the sufficient contact necessary to subject the nonresident to the judicial jurisdiction of the state in which the corporation had its corporate residence. The plurality opinion also relied on opinions from other jurisdictions that held that a nonresident limited partner's ownership interest in a partnership, standing alone, is not sufficient to subject that partner to the state's in personam judicial jurisdiction.
The dissent in Lanzi reflected the view that when the basis for the exercise of the taxing jurisdiction of a state over a nonresident limited partner is, itself, the nonresident's limited-partnership interest (as opposed to a basis unrelated to that interest), the limited-partnership interest constitutes a contact with the state sufficient for the state's exercise of its taxing jurisdiction over the nonresident consistent with due process. In support, the dissent relied on, among other things, cases from other jurisdictions that held that a state, consistent with due process, could levy an income tax on a nonresident shareholder in a resident S corporation on the basis that an S corporation, like a partnership, is a "flow-through" entity.
We agree with Prince that the facts in Lanzi are not easily distinguishable from the facts in the present case with regard to due-process analysis. However, because Lanzi is a plurality opinion, it does not constitute binding authority. See Waddell v. Waddell, 904 So.2d 1275, 1285 (Ala.Civ. App.2004). To the extent that the plurality opinion in Lanzi suggests that the imposition of a tax on the income Prince derived from the sale of Zebra.net's assets violates the Due Process Clause, we reject that view as inconsistent with our understanding of the Due Process Clause as requiring only "`some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" Allied-Signal, 504 U.S. at 777, 112 S.Ct. 2251.
Prince next contends that the Department lacks a statutory basis on which to levy a tax on the income at issue in this case because he is not a resident of Alabama. Section 40-18-2(a)(6), Ala.Code 1975, imposes an income tax on "[e]very nonresident individual receiving income from property owned or business transacted in Alabama." Prince argues that this section does not apply to him because, he argues, the income he received was derived from his sale of Zebra.net stock rather than from Zebra.net's receipt of the income generated by the sale of its assets. Specifically, he argues that he owned the stock in Mississippi, and the transaction involving the sale of the stock occurred in Georgia.
As discussed above, for tax purposes, the income Prince received is appropriately characterized as having been generated by Zebra.net's sale of its assets, rather than by the sale of Prince's Zebra.net stock. Prince does not argue, and, thus, he has failed to demonstrate, that, when so characterized, the income he received was not derived "from property owned or business transacted in Alabama." Thus, he has failed to demonstrate that § 40-18-2(a)(6) does not provide a statutory basis for the Department's levy of a tax on the income at issue in this case.
*285 Finally, Prince contends that the Department's imposition of a tax on the income he received as a result of the merger transaction violates the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3. As Prince notes, the United States Supreme Court stated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), that for a tax on an interstate activity to pass muster under the Commerce Clause, among other things, the activity must have a "substantial nexus" with that state. 430 U.S. at 279, 97 S.Ct. 1076. Prince repeats his earlier assertion that the merger transaction occurred in Georgia and involved only the sale of his Zebra.net stock, which he owned in Mississippi. Thus, he concludes, the transaction did not have a substantial nexus with Alabama.
The Department responds by arguing that, for purposes of determining whether the income a nonresident shareholder receives from a resident S corporation is subject to an income tax by the S corporation's state, the activity of the S corporation is attributable to the corporate shareholders, such that a nexus between the state of the S corporation and its nonresident shareholders exists. It cites numerous cases in which the courts of other jurisdictions have concluded that the imposition of a tax on a nonresident shareholder does not violate the federal constitution.
Prince's sole citation to legal authority in his argument, Complete Auto Transit, supra, stands for the general proposition that a "substantial nexus" must exist between the taxing state and the transaction to be taxed. He cites no legal authority applying the general rule in a manner that would demonstrate the appropriate outcome in the present case. As such, his argument is not sufficient to justify reversal of the trial court's determination. See Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004) ("Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal."). Moreover, Prince's contention is predicated on his argument that the merger transaction involved only the sale of his Zebra.net shares rather than Zebra.net's sale of all of its assets. Because, at least for taxing purposes, we have rejected such a characterization of the merger transaction, Prince has failed to demonstrate that the Department's imposition of a tax on the income Prince derived from the merger transaction violated the Commerce Clause of the United States Constitution.
Based on the foregoing, we conclude that Prince has failed to demonstrate error with regard to the trial court's affirmance of the Department's income-tax assessment against him. As a result, we affirm the trial court's summary judgment in favor of the Department.
APPLICATION OVERRULED; OPINION OF JANUARY 22, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., dissents, with writing.
BRYAN, Judge, dissenting.
The main opinion explains the procedure for making an election pursuant to 26 U.S.C. § 338:
"26 U.S.C. § 338(g)(2) provides that an election under that section `shall be made in such manner as the Secretary [of the United States Treasury Department] shall by regulations prescribe.' Treasury Regulation 26 C.F.R. § 1.338(h)(10)-1(c)(3) provides that an election under § 338 is made `on Form 8023 in accordance with the instructions to the form.' At the time of the merger *286 transaction, the instructions to Form 8023 provided, in relevant part:
"`Persons making elections under section 338 must file Form 8023.
"`Generally, a purchasing corporation must file Form 8023 for the target. If a section 338(h)(10) election is made for a target, Form 8023 must be filed jointly by the purchasing corporation and the common parent of the selling consolidated group (or the selling affiliate or S corporation shareholder(s)).
"`. . . .
"`File Form 8023 by the 15th day of the 9th month beginning after the acquisition date to make a section 338 election for the target corporation. File Form 8023 with the District Director (Attention: Chief of Examination) for the Internal Revenue district where the main corporate office (headquarters) of the purchasing corporation is located. . . .'"
55 So.3d at 279 (some emphasis omitted).
The record on appeal contains evidence indicating that the parties to the transaction in this case intended to make an election under 26 U.S.C. § 338. However, there is no direct evidence indicating that a Form 8023 was filed pursuant to the applicable regulation. A Form 8023 must be properly filed in order to make a valid election under § 338. Therefore, I believe that the trial court erred in concluding that the parties to the transaction made a valid election under § 338 to treat the transaction as a sale of the assets of Zebra.Net, Inc. ("Zebra.net"). Because such an election was not made, the transaction in this case should be treated as the sale of stock owned by Zebra.net's shareholders. Section 40-18-2(a)(6), Ala.Code 1975, imposes an income tax on "[e]very nonresident individual receiving income from property owned or business transacted in Alabama." James E. Prince, Jr., owned his Zebra.net stock in Mississippi, his state of residence, and the sale of that stock occurred in Georgia. Because Prince, a nonresident of Alabama, did not own his stock in Alabama and did not transact any business in Alabama, he was not subject to Alabama income tax. Accordingly, I would reverse the trial court's summary judgment affirming the income-tax assessment made by the State Department of Revenue ("the Department") against Prince.
Moreover, even if the parties to the transaction made a valid election under § 338, I believe that the facts of this case are materially indistinguishable from the facts in Lanzi v. Alabama Department of Revenue, 968 So.2d 18 (Ala.Civ.App.2006). In Lanzi, a plurality of this court concluded that Alabama lacked jurisdiction to impose income tax on a nonresident whose only connection with Alabama was his limited-partnership interest in an Alabama limited partnership. Like the nonresident in Lanzi, Prince lacks the minimum contacts with Alabama needed to subject him to Alabama jurisdiction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. I recognize that a court is obligated to avoid addressing constitutional questions unless doing so is essential to the proper disposition of a case. See Lowe v. Fulford, 442 So.2d 29, 33 (Ala.1983). However I cite Lanzi as only an alternative basis for reversing the judgment of the trial court if a valid election was not actually made under § 338.[5]
NOTES
[1] The purpose and effect of an election under 26 U.S.C. § 338 has been described as follows:

"Sometimes, the parties to an acquisition may wish to structure it as a stock sale rather than an asset sale for non-tax reasons (e.g., a stock sale is generally easier to structure mechanically), but may wish to have the transaction treated as an asset sale for tax purposes (e.g., so that the buyer will receive a stepped-up basis in the purchased assets). In order to achieve this goal, the parties may consider making an election under I.R.C. § 338(h)(10).
"Generally, an I.R.C. § 338(h)(10) election is permitted where (i) there is a taxable purchase of at least 80% of the target's stock, (ii) either the seller is a corporation owning at least 80% of the target's stock or the target is an S corporation, (iii) the buyer is a corporation unrelated to the seller, (iv) the target is a U.S. corporation, and (v) the election is made by both the buyer and seller. Under I.R.C. § 338(h)(10), the stock sale is treated as if the target had sold its assets in a taxable transaction and liquidated tax-free into its parent under I.R.C. § 332 (or to its Subchapter S shareholders). The sale of the target's stock is disregarded for federal income tax purposes. Thus, the only tax that is imposed is on a deemed sale by the target subsidiary of its assets."
Michael T. Petrik and Ethan D. Millar, State & Local Tax Aspects of Corporate Acquisitions, Practising Law Institute, Tax Law and Estate Planning Course Handbook Series, PLI Order No. 14322 (October-December 2008) (footnotes omitted).
[2] Prince argues that the Department did not properly authenticate the copy of the Form 8023 that it submitted to the trial court. He candidly admits in his appellate briefs, however, that the parties to the merger transaction, including himself, signed the Form 8023 and that, during the course of discovery in this action, he provided the copy of the Form 8023 to the Department that the Department then submitted to the trial court.
[3] Courts in other states that addressed this issue under their respective states' laws have arrived at the same conclusion. See, e.g., General Accessory Mfg. Co. v. Oklahoma Tax Comm'n, 122 P.3d 476, 480 (Okla.Civ.App. 2005) ("For federal tax purposes, Taxpayers elected to treat the sale of stock in their Oklahoma corporation as a sale of corporate assets, and their federal election is binding for state tax purposes. As the business situs of the corporation with income derived from sources within the State, the sale of its assets constituted a state taxable event, and permissibly subjected the non-resident Taxpayers to liability for Oklahoma income tax."); and Mandell v. Auditing Div. of the Utah State Tax Comm'n, 186 P.3d 335, 344 (Utah 2008) ("All of HAU's shareholders elected to characterize the sale as a deemed asset sale under I.R.C. § 338(h)(10). As a result, the gains realized through the sale were taxable as if the corporation had sold assets rather than stock. See id. § 338(h)(10). The gains from the sale passed through to the shareholders, who bore the responsibility of paying taxes on those gains in proportion to their ownership interests. See id. § 1366(b); see also Utah Code Ann. § 59-7-701. The gains recognized from this deemed asset sale constitute Utah source income under Utah Code sections 59-10-118(1)(a), which defines business income, and 59-7-114(4), which creates a rebuttable presumption that the gain on a deemed sale of assets under a section 338 election constitutes business income. They are therefore taxable under Utah Code section 59-10-117(2)(d)." (footnote omitted)). See, generally, James A. Amdur, Annotation, State Tax Consequences of Election Under § 338 of Internal Revenue Code (26 U.S.C.A. § 338) §§ 4-6, 26 A.L.R.6th 219 (2007).
[4] See, generally, James A. Amdur, Annotation, State Income Tax Treatment of S Corporations & Their Shareholders § 24, 118 A.L.R.5th 597 (2004); Jerome R. Hellerstein, State Taxation ¶ 20.08[2][a][iii] (2003) ("The cases have consistently sustained the states' efforts to tax nonresident S corporation shareholders on their share of S corporation income attributable to the state."); James E. Maule, State Taxation of S Corporations, Tax Management, Multistate Tax Portfolios, § 1510.05D.2.b. (BNA 2006) (stating that "[a] state should have jurisdiction to tax S corporation income in the hands of the shareholders, even if they are nonresidents, if it has jurisdiction to tax the S corporation with respect to its income," indicating that that proposition, however, was "not without doubt," and discussing four separate arguments in support of the taxation of nonresident S corporation shareholders); Prentiss Willson and Mark Windfeld-Hansen, State Taxation of Pass-Through Entities: General Principles, Tax Management, Multistate Tax Portfolios, § 1500.11A.2. (BNA 2002) ("Nonresident S corporation shareholders have on several occasions sought to set aside such state taxes on the ground that the U.S. Constitution precludes a state from taxing nonresident shareholders based solely on the activities of their S corporations in the taxing state. As yet, however, no court has upheld such a challenge.").
[5] This case provides an example of why people may become easily frustrated by government action. In 2000, Prince paid income tax in Mississippi on the gain received from the transaction in this case. Zebra.net filed its informational tax return with the Department in June 2000. However, the Department did not initially assess income tax on Prince until November 2004. The Department contends that Prince may claim a credit in Mississippi for income tax paid to Alabama. However, Mississippi law provides a three-year limitations period for income-tax refund claims, Miss.Code Ann. § 27-73-5 (2009); that limitations period has long since expired. Consequently, it now appears that Prince will have to pay state income tax in both Mississippi and Alabama, arguably through no fault of his own.